IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMUNITY ASSOCIATION | : | |
| UNDERWRITERS OF AMERICA, INC. | : | |
| A/S/O PARK VIEW AT WAVERLY, A | : | |
| CONDOMINIUM | : | |
| C/O PMI MANAGEMENT | : | |
| Plaintiff | : | Civil Action No.:  1:09 CV 0257 |
| | : | |
| v. | : | |
| | : | |
| RHODES DEVELOPMENT GROUP, | : | The Honorable Sylvia H. Rambo |
| INC. A/K/A RHODES DEVELOPMENT | : | |
| CORP. A/K/A R&L CONSTRUCTION | : | |
| COMPANY, ADAMS DRYWALL, | : | |
| PEDRO YAHUITL QUINTERO and | : | |
| ALAN BARB | : | |
| Defendants | : | |

## DEFENDANT, PEDRO QUINTERO'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    FACTS:

This case involves a subrogation claim on behalf of Community Association Underwriters of America, Inc. (hereinafter "CAUA"). In this action, CAUA seeks to recover payments made to Park View at Waverly, a Condominium, arising out of a fire which occurred on March 4, 2008 that caused damage to several units in the 6-unit residential building located on Park View in Swatara Township, Dauphin County, Pennsylvania. The fire was reported to the authorities at approximately 6:34 a.m.   See deposition of Fire Marshal George Drees at p.10. Unit 417 was the most heavily damaged by the fire and appears to be the unit where the fire originated.   On

the day immediately prior to the fire, the only construction work being actively performed in Unit 417 was dry walling. The condominium complex was originally owned and developed by Waverly Woods Associates (hereinafter "Waverly Woods"). Waverly Woods entered into an AIA Standard Form of Agreement between owner and contractor with R&L Construction Company (hereinafter "R&L") on December 1, 2005, whereby R&L was to be the general contractor for construction of the condominium units. On January 23, 2008, R&L entered into a written subcontract with Adams Drywall, Inc. (hereinafter "Adams") whereby Adams was to install drywall in the units of Phase 7 of Park View at Waverly, which included the subject unit in question. Thereafter, Adams entered into oral subcontracts with Alan Barb (hereinafter "Barb") and Pedro Quintero (hereinafter "Quintero") whereby the latter two individuals would perform all of the drywall work contracted to be performed by Adams. The work to be performed by Quintero is what is commonly referred to as "finish" work, which involves placing tape over the joints between the abutting sheets of drywall after they have been hung and then applying joint compound over the joints in three separate applications, usually over the course of three days in order to allow each coat of compound to properly dry before the next coat is applied. Joint compound is similar to plaster and requires a period of time to dry. In a structure that is otherwise unheated, a source of heat is typically used to prevent the drywall from freezing and cracking during periods of

cold weather. In the present matter, it is undisputed that R&L provided propane-fired portable heaters and tanks of propane gas to be used by the various subcontractors, including Quintero. These propane-fired portable heaters were used by the drywall finishers to keep the units at a temperature above freezing as needed during the day and overnight. Typically, the heaters would be left on overnight as there was no auxiliary source of heat in the unit during the dry walling process.

It is submitted that plaintiff, experts of plaintiff, and other representatives of plaintiff contaminated the fire scene which prevented Quintero's experts from being able to fully evaluate the fire scene and determine the origin and cause of the fire. Fire Marshal George Drees was present at the outset of the fire and remained at the fire scene until approximately 12:30 p.m. on March 4, 2008. Fire Marshal Drees testified that he was able to interview Pedro Quintero at the scene of the fire. After the fire had been put out, Fire Marshal Drees, representatives of the Pennsylvania State Police as well as representatives of plaintiff's insurance carrier and others, agreed that everyone would get together on the morning of March 5, 2008 to decide how to proceed. Fire Marshal Drees testified that on the morning of March 5, 2008, he met with Tom Minnich, who is a representative of Kufta Associates, which is the entity that is serving as plaintiff's origin and cause expert. Drees testified that Kufta recommended a demo company and that the demo company would have people on site on March 6, 2008 to finish the dig out. Fire Marshal Drees testified that no

demolition or delamination occurred on March 5, 2006. The subject heater which is the basis of plaintiff's claim in this matter, as well as the propane cylinder were discovered in the debris on March 6, 2008. Fire Marshal Drees also testified that Brad Schriver from Kufta Associates replaced Tom Minnich during the dig-out that occurred on March 6, 2008. Mr. Schriver is serving as plaintiff's origin and cause expert.

Bern Anthony was retained by Kufta Associates to perform demolition work at the scene. Bern Anthony testified that he was at the scene at the direction of Kufta on March 5 and March 6, 2008. Anthony testified that no excavation activities were performed on March 5, 2008. Anthony testified that he arrived at the fire scene on March 6, 2008 at approximately 8:00 a.m. Anthony testified that he did not start demolition right away as he was waiting for plaintiff's expert, Brad Schriver to arrive at the scene. Anthony testified that demolition activities began at 10:00 a.m. on the aforesaid date and further testified that his activities were being directed by Brad Schriver who is plaintiff's expert. Anthony testified that after the portion of the roof was removed as well as the front A-wall of the property, he went down in the hole, as the first floor had collapsed into the basement, and he testified that he became a miner looking for evidence and specifically looking for the heater. Anthony went on to testify that Brad Schriver would tell him where to dig. The building was made safe to dig late on the morning of March 6, 2008. Anthony testified that the subject

heater was found after shoveling. He testified that Brad Schriver authorized him to remove the heater. Anthony removed the heater from the scene and took it to Mr. Schriver's office located at Kufta Associates.

Bill Walsh is the executive adjuster assigned by CAUA to handle the subject claim and CAUA's subrogation interest. See Walsh Deposition at pp.10-15. Walsh testified that they retained attorney Daniel deLuca, Esquire on March 4, 2008, the day of the fire. On March 5, 2008, plaintiff's attorney Daniel deLuca authored a letter which was sent by fax to Adams Drywall c/o Jacob H. Ruhl, Inc., and Rhoads Development Corporation. The aforesaid letter was not addressed to either Pedro Quintero or Quintero's insurance carrier, Northland Insurance Company. In the aforesaid letter of March 5, 2008, attorney deLuca indicates as follows: "A follow up inspection will take place in the next two days - tomorrow and Friday - at this property, and you and/or your carrier are invited to attend. Either way, please know that due to the dangerous condition of the property, it is expected that the repair/demolition efforts will begin soon, so time is of the essence here. The provisions of attorney deLuca's letter clearly led all addressees to believe that the property would be available for inspection before it was repaired and/or demolished on both March 6 and March 7, 2008. As per the testimony of Bern Anthony and Fire Marshal Drees referenced above, it is clear that demolition occurred on the morning hours of March 6, 2008 and the subject heater was removed from the scene during

the afternoon hours of March 6, 2008, contrary to the provisions of attorney deLuca's letter. Throughout the testimony of Bill Walsh, it is evident that plaintiffs are taking the position that the property was unsafe and that repairs and/or demolition had to begin before March 7 2008. Despite this knowledge and the circumstances, attorney deLuca made no attempt to contact the parties referenced in the letter of March 5, 2008 nor did anyone make any attempt to contact either Quintero or Quintero's insurance carrier before the dig-out that occurred on March 6, 2008. There was never any follow up communication from either attorney deLuca nor Mr. Walsh of CAUA concerning the change in plans with regard to the demolition and dig-out that occurred on March 6, 2008.

Michael Moyer is an origin and cause expert retained by Adams Drywall to investigate the circumstances of the subject fire. He testified that he was retained by Adams' insurer, Penn National on March 6, 2008. Mr. Moyer testified that he was sent a copy of attorney deLuca's letter of March 5, 2008 and in response to that, contacted attorney deLuca's office at 12:30 p.m. on March 6, 2008. He was then directed by Stacy at attorney deLuca's office to contact Bill Walsh of CAUA. Mr. Moyer contacted Bill Walsh at 12:40 p.m. on March 6, 2008 and was advised by Walsh that evidence would be removed from the scene later that day, March 6, 2008. Mr. Moyer testified that he arrived at the scene at approximately 4:30 p.m. and present at the scene was Brad Schriver, plaintiff's expert who directed him to Bill

Walsh. It appeared to Mr. Moyer that demolition work had already occurred. Mr. Moyer had the opportunity to inspect the fire scene after demolition occurred but was unable to find the heater that plaintiff alleges caused the fire. He subsequently learned that the heater was in the back of Bern Anthony's truck. Mr. Moyer testified that it was important as part of his investigation to inspect the heater in the exact spot it was found because it would give him an idea where the heater was located at the time of the fire and would also allow him to make observations of the heater in regards to the fire intensity and movement patterns toward the heater. Mr. Moyer went on to testify that the modification of the scene was going to negatively affect his ability to make a determination of origin and cause of the fire and to identify ignition sources. Finally, Mr. Moyer testified that he was unable to reach an opinion of origin or cause because of the scene alteration and contamination.

By letter dated March 10, 2008, Mark Romah from Penn National Insurance placed both Pedro Quintero as well as Quintero's insurer, Northland Insurance Company on notice of the potential claim against Quintero. As reflected above, it is clear that the scene had been substantially altered and contaminated before Quintero received Romah's letter of March 10, 2008. Once it received notice of the claim, Northland Insurance Company contacted John Bethel as its origin and cause expert. As reflected in the attached report of Bethel, he was also unable to determine an origin and cause of the fire due to scene contamination and alteration. In accordance

with the case management order issued in this case, plaintiff provided defendants

with copies of various expert liability reports, one of which expressed the following

opinion as to the "cause" of the fire:

> " In conclusion, based on the scene examination and information learned during the course of the investigation, it is the opinion of this investigator that the cause of the fire was attributed to the improper use of the propane-fired portable heater that was left energized overnight for the curing of drywall on the first floor level of 417 Park Drive.".

Report of Bradley A. Schriver, Kufta Associates (September 14, 2010).


## II.   ISSUES PRESENTED:

Whether defendant, Pedro Quintero is entitled to summary judgment because

of the fact that the subject fire scene had been contaminated and altered before

Quintero's origin and cause expert could examine the scene and offer an opinion as to

the origin and causation of the subject fire.

Proposed Answer:

Yes.

## III.   ARGUMENT:

Defendant, Pedro Quintero, respectfully submits that he is entitled to summary

judgment because of spoliation of evidence on the part of plaintiff and/or plaintiff's

expert.  The spoliation of evidence standards the court is to consider was set forth by

the Third Circuit in the case of <u>Schmid v. Milwaukee Electrical Tool Corp.</u>, 13 F.3d

76 (3rd Cir. 1994). This standard has also been adopted by the Pennsylvania

Supreme Court. See, <u>Schroeder v. Department of Transportation</u>, 710 A.2d 23 (Pa.

1998). According to <u>Schmid</u>, the Spoliation Doctrine is broadly applicable to cases

where "relevant evidence" has been lost or destroyed:

> We believe the key consideration in determining whether
> such a sanction was appropriate should be: (1) The
> degree of fault of the party who altered or destroyed the
> evidence; (2) The degree of prejudice suffered by the
> opposing party; and (3) Whether there is a lesser sanction
> that will avoid substantial fairness to the opposing party
> and, where defending party is seriously at fault, would
> serve to deter such conduct by others in the future. See,
> e.g., <u>Dillon v. Nissan Motor Corp., Ltd.</u>, 986 F.2d 263 (8th
> Cir. 1993); <u>SDI Operating Partnership v. Neuwirth</u>, 973
> F.2d 652 (8th Cir. 1992)…

<u>Schmid</u>, 13 F.3d at 78-79.

<u>Schmid</u> applies not only to case where the product is lost or destroyed, but also

to cases where alternative potential causes of the accident are lost or destroyed. See,

<u>Pia. v. Perrotti</u>, 718 A.2d 321 (Pa. Super. 1998), Appeal Denied, 737 A.2d 743 (Pa.

1999). Bad faith is not a necessary prerequisite to sanctions for spoliation. <u>Id</u>. A

principal is responsible for the acts or omissions of its agents, whether or not it is

aware of or authorizes those acts or omissions. <u>Travelers Casualty & Surety Co. v.

Castegnaro</u>, 772 A.2d 456 (2001) citing <u>Aiello v. Ed Sax Real Estate, Inc.</u>, 499 A.2d

282 (1985).

Further, guidelines prepared by the National Fire Protection Association directed the evidence be preserved. The technical committee on fire investigations developed NFPA 921, *Guide for Fire and Explosions Investigations* to assist in improving the fire investigation process and the quality of information on fire resulting from the investigative process. Chapter 9 deals with physical evidence. The pertinent section of Chapter 9 is as follows:

### 9-3.4.1 Preservation

Once an artifact or other evidence has been discovered, preliminary steps should be taken to preserve and protect the item from loss, destruction or movement. The person making the discovery should notify the incident commander as soon as practical. The incident commander should notify the fire investigator or other appropriate individual or agency with authority and responsibility for the documentation and collection of evidence.

Plaintiff failed to abide by NFPA 921 which resulted in a severe, unfair advantage to plaintiff.

In the case at bar, it is clear that the fire scene was substantially contaminated and altered by the time Quintero's expert, John Bethel examined the scene, and in fact, had been substantially altered and contaminated by the time Adams' expert inspected the scene as well. As the statement of facts indicates, and as the testimony cited reveals, the front wall of the property as well as several areas of the roof had been demolished during the morning hours of March 6, 2008. Further, the subject heater and propane tank were removed from the fire scene and placed in the back of

Bern Anthony's truck sometime during the day of March 6, 2008 before the origin and cause investigator for Adams arrived at the scene. There is no dispute that these items of evidence were not present at the scene when John Bethel, the origin and cause expert for Quintero investigated the scene on or about April 1, 2008. The next questions becomes whether the scene alteration and destruction can be attributed to the conduct of plaintiff. The deposition testimony of Fire Marshal Drees indicates that the scene was still preserved after the fire was extinguished at approximately 12:30 p.m. on March 4, 2008. At that time, the front wall of the property was still standing and excavation of the fire scene had not yet begun. It was agreed by all at that time that the parties would reconvene on March 5, 2008. In the meantime, it is clear that attorney deLuca was retained by plaintiff on March 4, 2008. On March 5, 2008, attorney deLuca addressed a letter to representatives of Adams Drywall as well as R&L Construction indicating that the scene would be available for inspection on both March 6 and March 7, 2008. It was represented in the letter that contamination and demolition of the fire scene had not yet begun and was certainly implied in the letter that such activities would not begin before the parties were invited to an inspection on March 6 and March 7, 2008. This letter was never sent to Pedro Quintero or Quintero's insurance carrier despite the fact that Quintero was present at the fire scene on the date of the fire and was interviewed by the fire marshal. Representatives of plaintiff, as well as representatives of Kufta Associates, plaintiff's

origin and cause experts, were at the fire scene on March 5, 2008. There were also representatives of the Fire Marshal's office as well as the Pennsylvania State Police. It was determined at that time that demolition of the front wall of the property should be undertaken and the parties agreed that the demolition would occur in the morning hours of March 6, 2008. This is despite the representations made in attorney deLuca's letter that the scene would be available for inspection without demolition on both March 6 and March 7, 2008. Plaintiff argues that demolition only occurred because it was done either at the request of government officials or because the scene was in danger of collapse. If the scene was in danger of collapse, then it odd that demolition did not occur on either the afternoon of March 4, 2008 or at any time during the day of March 5, 2008. Further, Bern Anthony, the demolition contractor hired by Kufta testified he was directed at the scene by Brad Schriver who is plaintiff's origin and cause expert. Further, even if plaintiff's argument are accepted, then plaintiff certainly was on notice that the provisions of attorney deLuca's letter were misleading, and therefore, plaintiff should have undertaken steps to notify the appropriate authorities that the scene would have to be altered at an earlier point in time than otherwise indicated in attorney deLuca's letter. In either event, plaintiff bears sole responsibility for the destruction and alteration of the fire scene. In other words, if in fact demolition was ordered on March 6, 2008 by government authorities as plaintiff contends, and if the scene was in danger of collapse as plaintiff contends,

then clearly by plaintiff's own admissions cited in the record, plaintiff was aware of the circumstances as early as March 5, 2008, and despite such knowledge, never took any steps to notify the appropriate parties that the scene would be altered and contaminated as of the morning hours of March 6, 2008.

The record shows that Michael Moyer was an origin and cause expert retained by codefendant Adams Drywall. Mr. Moyer was retained on March 6, 2008 and testified that he immediately contacted plaintiff's counsel whose office then directed him to William Walsh, who is the executive adjuster of plaintiff's insurance company responsible for the subrogation claim. While there is a difference between Mr. Walsh and Mr. Moyer as to what transpired during their conversation, it is clear that Mr. Moyer arrived at the scene in the latter portion of the afternoon of March 6, 2008 and by that time, the scene had been substantially altered and the subject heater and propane tank had been removed from the scene and placed in the back of Bern Anthony's truck. It is clear from the testimony of Michael Moyer that the scene had already been destroyed and contaminated at that point in time and Mr. Moyer was not able to come up with an opinion as to origin and cause of the fire. Accordingly, fault can be placed on plaintiff for writing a misleading letter notifying the parties that they had until March 7, 2008 to inspect the scene. Further, fault on plaintiff can be placed because of plaintiff's conduct in allowing the scene to be compromised despite representations made by their attorney that the scene would be preserved intil March

7, 2008.  Finally, if in fact the scene had to be altered or destroyed in the earlier point in time as plaintiff contends, then fault can also be placed on plaintiff for failure to notify the parties on March 5, 2008 that they should inspect the scene on that date or on the early morning hours of March 6, 2008 before demolition had occurred.

The second prong of the Schmid test involves a degree of prejudice suffered by the opposing party, i.e., Pedro Quintero.  The evidence shows that plaintiff pursuant to the Court's Case Management Order, produced an expert report by Brad Schriver opining that the origin of the fire was on the first floor of Unit 417 and also opining that the cause of the fire was improper use of the subject space heater. George Drees, the Fire Marshal was able to determine an origin of the fire but never determined the cause of the fire.  Accordingly, there is no unbiased party who has been able to make a determination as to causation.  As early as the afternoon of March 6, 2008, the scene had been contaminated enough that event he expert retained by Adams Drywall, who was present at the scene on the afternoon hours of March 6, 2008 was not able to come up with either an origin or cause of the fire. It goes without saying then, that when Quintero and his insurance carrier were notified of the claim, their origin and cause expert who inspected the scene after Michael Moyer, was also unable to determine an origin and cause of the fire.  Since all of the defendants' experts had been severely hampered in their ability to determine a cause and origin and cause of the fire, defendants are left without any means to rebut the

opinions of Mr. Schriver.  Plaintiff's own expert was present at the scene on both March 5 and March 6, 2008, and therefore, plaintiff was the only party in position to determine an origin and cause of the fire to the detriment of defendants. It is patently unfair to allow plaintiff to proceed with the testimony of Brad Schriver and defendants are left to call expert after expert all of whom were unable to determine either an origin or cause of the fire because they did not have the opportunity to examine the fire scene in an unaltered state.  If the court permits this, plaintiff would greatly profit by their own acts and omissions with regard to notifying the defendants and with regard to their duty under Pennsylvania Law to preserve the evidence until all parties have had an adequate opportunity to inspect the evidence.  The only sanction that can adequately protect the defendants is outright dismissal of plaintiff's claim since defendants' experts have no means to rebut any of the claims made by Mr. Schriver. Importantly, defendants are left with an inadequate means to properly defend themselves in this case because of the spoliation of evidence by plaintiff.

Respectfully submitted,

WILLIAM J. FERREN & ASSOCIATES

By:_____
     ANDREW J. KEENAN, ESQUIRE
     Attorney for Defendant, Pedro Quintero