IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC. A/S/O PARK VIEW AT WAVERLY, A CONDOMINIUM C/O PMI MANAGEMENT,** | : : : : : | **CIVIL NO. 1:09-CV-0257** |
| **Plaintiff** | : : | |
| **v.** | : : | |
| **RHODES DEVELOPMENT GROUP, INC. A/K/A RHODES DEVELOPMENT CORP. A/KA/ R&L CONSTRUCTION COMPANY, ADAMS DRYWALL, and PEDRO YAHUITL QUINTERO,** | : : : : : : : | **Judge Sylvia H. Rambo** |
| **Defendants** | : : | |

## M E M O R A N D U M

This case involves a subrogation claim filed by Community Association Underwriters of America, Inc., ("CAUA") seeking recovery of payments made to Park View at Waverly Condominiums ("Park View") as a result of a fire that occurred on March 4, 2008. Before the court are five motions for summary judgment filed by various Defendants. Defendants Pedro Quintero, Rhodes Development Group, and Adams Drywall filed three separate but generally identical motions seeking summary judgment on the grounds of spoliation of evidence resulting from alleged tampering with the fire scene during the demolition process. (Docs. 43, 49, & 50.) Defendants also filed a joint motion for summary judgment on the grounds that Plaintiff's expert's report is deficient because it fails to state the basis for the expert's opinion as required under Federal Rule of Civil Procedure 26 (a)(2)(B). (Doc. 45.) Lastly, Defendants filed a joint motion for summary judgment

based upon Plaintiff's alleged waiver of subrogation.  (Doc. 95.)  The motions have been fully briefed and are ripe for disposition.  Also presently pending and ripe is Plaintiff's motion in limine regarding the proper method for calculating damages in this case.  (Doc. 99.)  For the reasons set forth below, Defendants' joint motion for summary judgment based upon waiver of subrogation will be granted.  Because the court will grant summary judgment in favor of Defendants based on waiver of subrogation, the court need not address Defendants' other motions for summary judgment or Plaintiff's motion in limine.

I.          **Background**

    A. **Facts**[1]

        The following are only those facts relevant to Defendants' waiver of subrogation argument, and are undisputed unless otherwise noted.[2]

        This case arises out of a fire that occurred on March 4, 2008 at Park View Condominiums, located in Swatara Township, Dauphin County, Pennsylvania.

---

        [1]    In *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148–49 (3d Cir. 2002), the Third Circuit reaffirmed its supervisory rule first announced in *Vadino v. A. Valey Engineers,* 903 F.2d 253, 259 (3d Cir.1990) that "the district courts in this circuit [must] accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order."  *Vadino*, 903 F.2d at 259.  Here, the court will identify those facts that are subject to genuine dispute, and cite to the record in order to highlight the precise nature of any disputed facts.  The court will not cite to the record where the facts are undisputed; instead, the court will rely on the statements of material fact and admissions submitted by the parties.  The materiality of any genuinely disputed facts will be analyzed in the discussion section below.

        [2]    The parties submitted numerous additional facts in connection with Defendants' motions for summary judgment based on spoliation and a deficient expert report, including a time line detailing the alleged events on the days following the March 4, 2008 fire.  Many of these facts, however, are not relevant to Defendants' waiver of subrogation argument.  For clarity of the record, the court will only recite facts related to Defendants' waiver argument.

Plaintiff, CAUA, insures the condominium association for Park View.  Construction for Park View began when Waverly Woods Associates ("Waverly Woods"), the original owner of the subject real estate, entered into a standard American Institute of Architects contract ("AIA contract") on December 1, 2005, with R & L Construction Company ("R&L") whereby R&L was to be the general contractor for the construction of condominium units.  The AIA contract incorporated a separate document, entitled "General Conditions of the Contract for Construction," ("General Conditions") which included a standard waiver of subrogation clause ("Waiver"). That clause states, in relevant part:

> The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents, employees, each of the other, . . . , for damages caused by fire or other perils to the extent covered by property insurance . . . applicable to the Work.

(General Conditions, Doc. 98, Exh. B, Art. 11, § 11.3.7.)

R&L subsequently entered into a written subcontract with Adams Drywall, Inc. ("Adams") whereby Adams was to install drywall in the condominium units.  Thereafter, Adams entered into oral subcontracts with Alan Barb ("Barb") and Pedro Quintero ("Quintero").   When installing drywall, typically a heat source is necessary to prevent the drywall from freezing and cracking during periods of cold weather.  Here, R&L provided propane-fired portable heaters and tanks of propane gas to be used by the subcontractors for such purposes.  Plaintiff's amended complaint alleges that Defendants R&L, Adams and Quintero negligently placed the propane heater, causing the fire and the resultant damage and destruction.  (Doc. 90, ¶15.)

3

On May 24, 2007, almost a year prior to the fire, Waverly Woods signed and recorded a Declaration of Condominium ("Declaration"), whereby the subject real estate, "including all easements, rights and appurtenances thereto belonging to the Buildings and Improvements erected or to be erected thereon" became subject to the provisions of the Pennsylvania Uniform Condominium Act, 68 Pa.C.S. § 3101 *et seq.* ("the Act" or "PUCA"), thereby creating a flexible condominium known as "Park View at Waverly, a Condominium."[3]  Following the March 4, 2008 fire, Plaintiff paid Park View for damages to certain condominium units and, as a result, Plaintiff contends that it became subrogated to the rights of Park View to seek recovery for such losses from third-parties, including Defendants.

**B.**     **Procedural History**

On February 9, 2009, Plaintiff filed a complaint against Defendants R&L, Adams, Quintero, and Barb, alleging negligence and breach of contract. (Doc. 1.)  Defendant Barb was later dismissed by stipulation.  (Doc. 48.)  Plaintiff failed to serve Defendant Quintero, however, and therefore a separate complaint was filed solely against Defendant Quintero on December 10, 2009, also alleging

---

[3]  The Pennsylvania Uniform Condominium Act defines a "condominium" as:

Real Estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions.  Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners.

68 Pa. C.S. § 3103.  Furthermore, a "flexible condominium" is defined as a condominium "containing withdrawable or convertible real estate, a condominium to which additional real estate may be added, or a combination thereof."  *Id.*

4

negligence and breach of contract.  (Docket No. 1:09-CV-02431, Doc. 1.)  This court granted consolidation on February 16, 2010.  (Doc. 39.)

On February 14, 2011, Defendants filed a joint motion for summary judgment based on the waiver of subrogation clause incorporated into the AIA contract between the original owner, Waverly Woods, and the developer of the condominium complex, Defendant R&L.[4]  (Doc. 67.)  However, on April 13, 2011, this court granted Plaintiff's motion to amend its complaint.  (Doc. 89.)  In doing so, Plaintiff withdrew the breach of contract claim and also deleted any language from the original complaint claiming that Park View is a third-party beneficiary to any agreement between any other parties or non-parties to this action (e.g., the AIA contract).  (Doc. 90.)  The court also directed Defendants to either file amended motions for summary judgment or stand on the currently filed motions.  (Doc. 89.)  On April 27, 2011, Defendants filed a joint amended motion for summary judgment based upon waiver of subrogation and brief in support thereof.  (Docs. 95 & 96.)  Plaintiff submitted its brief in opposition on May 9, 2011, (Doc. 98) and Defendants filed a reply brief on May 23, 2011 (Doc. 103).  Accordingly, the motion is ripe for disposition.

## II.        Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[4]  Although the original dispositive motion deadline expired on November 15, 2010, the court granted Defendants' unopposed joint motion for an extension of the dispositive motion deadline on January 31, 2011.  (Doc. 61.)

entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party.  *Id.* at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Upon such a showing, the burden then shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial."  FED. R. CIV. P. 56(e).  The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  *Celotex Corp.*, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  *Saldana*, 260 F.3d at 232

(quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

Because subject matter jurisdiction in this case is based on diversity of citizenship, the court looks to the substantive law of Pennsylvania to determine the rights and obligations of the parties. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77 (1938). The law of the Commonwealth is declared by "its Legislature in a statute or by its highest court." *Id*. The Pennsylvania Supreme Court is the best authority on Pennsylvania law, but when the Supreme Court has not issued a clear pronouncement in a particular area, the court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data" to determine what the law is. *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661, 663 (3d Cir. 1980); *see also Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Opinions from lower Pennsylvania courts are not controlling, but they are entitled to significant weight when there is no indication that the Pennsylvania Supreme Court would rule otherwise.

## III.        Discussion

Although the facts as they pertain to Defendants' waiver argument are largely undisputed, the parties' interpretation of the scope of the AIA contract differs significantly. Defendants argue that the AIA contract, and the incorporated waiver of subrogation clause, applies to Park View because Park View is an intended third-party beneficiary of the contract. (Doc. 96 at 7-13.) Plaintiff responds that Park View is not a signatory party to the AIA contract and, moreover, the contract contains no express intent to benefit Park View. Plaintiff argues that

Park View is, at best, merely an incidental third-party beneficiary and thus not bound to the contract.  (Doc. 98 at 5-12.)  Therefore, the central issue this court must resolve is whether the waiver of subrogation clause incorporated into the AIA contract is applicable to Park View.

### A.      Park View is an Intended Third-Party Beneficiary to the AIA Contract Under the Restatement of Contracts  § 302

Because it is well-recognized in Pennsylvania that subrogation is an equitable doctrine that "places the subrogee [CAUA] in the position of the subrogor [Park View]," any defenses that may be raised against Park View may also be raised against CAUA.  *Reyna v. The Phoenix Ins. Co.*, 2011 U.S. Dist. LEXIS 26524, at *4 (M.D. Pa. March 15, 2011) (citing *Pub. Serv. Mut. Ins. Co. v. Kidder-Friedman*, 743 A.2d 485, 488 (Pa. Super. 1999)); *see also Church Mut. Ins. Co. v. Palmer Constr. Co., Inc.,* 153 F. App'x 805, 808 (3d Cir. 2005) (applying Pennsylvania law). Waivers of subrogation have been upheld by the courts.  *See Commercial Union Ins. v. Bituminous Cas. Corp.*, 851 F.2d 98 (3d Cir. 1988); *Penn Ave. Place Assocs. v. Century Steel Erectors*, 798 A.2d 256 (Pa. Super. 2002).  Courts considering AIA contracts similar to this one have concluded that "the contract operates to shift to the owner the ultimate risk of loss, which is then transferred to the insurer for consideration, leaving the insurer no right to proceed by subrogation against a subcontractor with respect to property loss." *Commercial Union Ins. Co.*, 851 F.2d at 101.  The issue to be resolved here is whether the waiver is also applicable to a third party, Park View, and thus to Park View's subrogee, CAUA.  Pennsylvania appellate courts have not previously decided whether a waiver of subrogation clause

is applicable under these circumstances.   For the reasons that follow, the court finds

that the waiver is applicable to Plaintiff.

Whether a party is a third-party beneficiary to a contract is an issue

properly decided on summary judgment because it presents a question of law for the

court to decide.[5]  *Guerra v. Springdell Village Homeowners Assoc.*, 2011 U.S. Dist.

LEXIS 37242, at *5 (E.D. Pa. April 6, 2011); *Shumate v. Twin Tier Hospitality,*

*LLC*, 655 F. Supp. 2d 521, 535 (M.D. Pa. 2009).  Pennsylvania has adopted the

Restatement (Second) of Contracts § 302 to determine whether a third party is an

intended beneficiary, *see Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983), which

provides the following:

> (1) Unless otherwise agreed between promisor and
> promisee, a beneficiary of a promise is an intended
> beneficiary if recognition of a right to performance in the

---

[5]  State law governs the interpretation of contracts.  In Pennsylvania, "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Lyons v. Lower Merrion Sch. Dist.*, 2010 U.S. Dist. LEXIS 142268, at *13 (E.D. Pa. Dec. 14, 2010) (citing *East Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965)).  Although courts generally strive to ascertain and give effect to the parties' intent, the inquiry is limited to the contract itself where its terms are clear and unambiguous.  *Id.* (citing *Kripp v. Kripp*, 849 A.2d 1159 (Pa. 2004) and *Dep't of Transp. v. Pa. Indus. for the Blind and Handicapped*, 886 A.2d 706, 711 (Pa. Cmwlth. 2005)).  However, in interpreting the parties' intent, this court will not restrict itself to the four corners of the AIA contract especially where, as here, other documents are incorporated into the contract and other circumstances – for example the legal implications regarding the construction and creation of a condominium – help to cast light on the intent of the parties.  *See, e.g., Great Am. Ins. Co. of N.Y. v. W. States Fire Prot. Co.*, 730 F. Supp. 2d 1308, 1315 (D.N.M. 2009) ("The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear.") (citations omitted); *Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. 1995) ("In order to determine the intent of the parties, it is often necessary to consider not only the contract between the parties, but 'subsidiary agreements, the relationship of the parties, the subject matter of the contract, . . . and other external circumstances that cast light on the intent of the parties.'") (citation omitted).   In this case, the AIA contract, the General Conditions, and the Declaration must all be read together to properly assess the intent of the parties.

> beneficiary is appropriate to effectuate the intention of the parties and either
>
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>>
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

RESTATEMENT (SECOND) OF CONTRACTS § 302.  This rule carved out an exception to the prior rule which stated that the intention to make a third party a beneficiary to a contract must affirmatively appear in the contract.  *See Spires v. Hanover Fire Ins. Co.*, 70 A.2d 828 (Pa. 1950).   Thus, Pennsylvania courts have found that some third parties may be intended beneficiaries even though they are not in privity of contract or specifically named as a beneficiary to the contract.  In summarizing the Restatement rule, the *Guy* court paraphrased it as follows:

> There is thus a two part test for determining whether one is an intended third party beneficiary: (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties" and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

*Guy*, 459 A.2d at 751.  In other words, the first part of the test sets forth a standing requirement that leaves discretion with the court to determine whether recognition of third-party status would be "appropriate."  *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992).  This step establishes whether an individual is a third-party beneficiary and is a question of law for the court's determination.  *Id.*  The second part defines the two types of claimants who may be intended as third-party beneficiaries.  *Id.*  If a party satisfies both parts of the test, then a claim or defense may be asserted under

10

the contract.  *Id.*  Otherwise, the party may be an incidental third-party beneficiary with no rights under Section 302.[6]  *Shumate*, 655 F. Supp. 2d at 535.

Defendants rely heavily on *Scarpitti, supra*, for the proposition that a party who is not named or even referred to in a contract can nevertheless be an intended third-party beneficiary.  In *Scarpitti*, the plaintiffs purchased real estate lots in a residential development and submitted building plans to an architect who was charged with enforcing deed restrictions pursuant to a contract between the architect and the developer.  The plaintiffs submitted plans that included the construction of a three-car garage which the architect disapproved because the plans violated a deed restriction limiting the size of the garage to two or two and one-half car garages. The plaintiffs then built their home in compliance with the deed restriction. However, the architect subsequently approved building plans submitted by other homeowners for the construction of homes with three-car garages.  The plaintiffs initiated suit against the architect for arbitrarily enforcing the deed restrictions under the theory that they, as homeowners, were intended third-party beneficiaries of the contract between the architect and the developer.  The court held that the homeowners were intended third-party beneficiaries because the contract containing the deed restrictions was entered into for the benefit of the homeowners who purchased lots in that development.  The court held:

> Obviously, the purpose of this agreement was to make the
> lots more attractive to prospective purchasers by assuring
> that other homeowners in the subdivision would be
> required to abide by the . . . restrictions.

***

---

[6]  An incidental third-party beneficiary is defined simply as a beneficiary who is not an intended beneficiary.  RESTATEMENT (SECOND) OF CONTRACTS § 302(2).

> Although not individually named, . . . homeowners were
> part of a limited class of persons intended to benefit from
> the agreement between [the architect] and [the developer],
> thus satisfying the second prong of *Guy* and subsection (b)
> of § 302 Restatement (Second) of Contracts (1979).

*Scarpitti*, 609 A.2d at 151.

Plaintiff retorts that Park View cannot be an intended third-party beneficiary because the AIA contract was intended to benefit only the contracting parties, Waverly Woods and R&L.  (Doc. 98, at 7-10.)  In support, Plaintiff relies almost exclusively on the Pennsylvania Commonwealth Court's recent decision in *Victoria Gardens Condo. Assoc. v. Kennett Township of Chester Cnty.,* 2011 Pa. Commw. LEXIS 184 (Pa. Cmwlth. Jan. 21, 2011).  In that case, a developer and township executed a road and improvement construction agreement under which the developer agreed to complete road construction and improvements in the development where the subject condominiums were located.  In light of the construction agreement, the developer and township also entered into a letter of credit agreement with a bank.  The plaintiff, Victoria Gardens Condominium Association ("the association") was not a party to either the construction agreement or the letter of credit agreement.  Ultimately, the developer was unable to complete either the road construction or the improvements and, as a result, the association filed suit.  The trial court dismissed the claims, holding that the association was merely an incidental third-party beneficiary of the agreement between the developer and the township, not an intended beneficiary.

On appeal, the Commonwealth Court upheld the trial court's order, agreeing that the association was not an intended third-party beneficiary of the

contract.  The court initially noted that, as in *Scarpitti*, the plaintiff was not named in the agreement as an intended third-party beneficiary.  However, in contrast to *Scarpitti,* the intent of the parties was unambiguously specified in the contractual language, which stated that:

> **WHEREAS**, Developer desires to obtain building permits for the construction of dwellings on lots to be created by the foregoing subdivision and desires to commence the construction thereof prior to the completion of the roads, public improvements and common amenities required by the Subdivision Plan and the completion of the control measures and other conditions specified in the soil erosion and sedimentation grading provisions and thereafter offer the same or a portion thereof to the Township for dedication upon completion.

*Id.* at *20-21.  Based on this language, the court found that the intent of the developer was to start construction of the dwelling units before construction of the roads and prior to the completion of the soil erosion and sedimentation grading requirements and there was no indication of any intent by the developer or the township to confer intended third-party beneficiary status upon the association.  *Id.* at *23-24.

Here, like the plaintiffs in *Scarpitti* and *Victoria Gardens*, Park View is not specifically named in the AIA contract as an intended third-party beneficiary. Thus, the court must resolve whether the contract was entered into with the intention to benefit Park View.  After thoroughly reviewing the AIA contract, the General Conditions including the waiver of subrogation, and the declaration of condominium, the court concludes that Park View is an intended third-party beneficiary to the AIA contract.

Plaintiff contends that the holding in *Victoria Gardens* should be read to mean that a party not named in a developer's contract can never be an intended third-party beneficiary. (Doc. 98 at 7-10.) Plaintiff notes that the court in *Victoria Gardens* distinguishes *Scarpitti*, finding that "[U]nlike the contract in *Scarpitti*, there was no intention by the Developer or the Township to confer intended third-party beneficiary status upon the Association under the Construction Agreement." (*Id.* at 9 (citing *Victoria Gardens*, *supra*, at *23.)) Plaintiff's argument seemingly expands this holding to infer a general rule that a condominium association not a party to a developer's contract can never be an intended third-party beneficiary. The court's holding should not be read so broadly, but rather should be viewed in conjunction with the facts of that case. Central to its holding was a clause in the construction contract, quoted above, that explicitly indicated the developer's intent. After analyzing that clause, the court found no indication that the developer intended to confer third-party beneficiary status on the township. Notably, the AIA contract at issue here contains no such clause explicitly indicating R&L or Waverly Wood's intention. Had the contract contained such unequivocal language indicating the parties' intent, the court's analysis here would be much more limited in scope. *See Lyons,* 2010 U.S. Dist. LEXIS 142268, at *13. Thus, the court's holding in *Victoria Gardens* is limited to the facts of that case which are easily distinguishable.

An examination of the AIA contract at issue here reveals that the intent of Waverly Woods and R&L was to construct condominium units. The contract states, in part:

> The Contractor shall execute the entire Work described in
> the Contract Documents, except to the extent specifically

14

indicated in the Contract Documents to be the responsibility of others, or as follows:

> *Construction of ninety-one (91) townhouse condominium units including all related site work for the project known as Parkview @ Waverly - Phase 7.*

(AIA Agreement, Doc. 98, Exh. A, Art. 2) (emphasis added). Accordingly, the "work" contemplated by the AIA contract is the building of condominium units. To ascertain the parties' full intent, it is also necessary to consider the operation of the PUCA, 68 Pa.C.S. §§ 3101-3414, and the obligations that Act places on Waverly Woods to fulfill its intent to build condominiums.

All states have adopted statutes related to the creation and governance of condominiums. In Pennsylvania, these actions are governed by the PUCA. The Act dictates that a condominium may only be created by recording a declaration to be executed in the same manner as a deed. 68 Pa.C.S. § 3201.[7] Here, by entering into a contract to construct condominiums, it logically follows that Waverly Woods and R&L intended to create a condominium pursuant to the Act. Although the

---

[7] That section reads, in full:

A condominium may be created pursuant to this subpart only by recording a declaration executed, in the same manner as a deed, by all persons whose interests in the real estate will be conveyed to unit owners and by every lessor of a lease the expiration or termination of which will terminate the condominium or reduce its size, provided, however, in any such lease wherein the lessor is the Commonwealth of Pennsylvania, a municipal government or any agency thereof, said lessor need not execute the declaration if they shall have previously given written consent to its filing and agreed to be bound by the provisions of the Pennsylvania Uniform Condominium Act, in which case said declaration shall be executed by the lessee then in possession of the subject property. The declaration shall be recorded in every county in which any portion of the condominium is located in the same records as are maintained for the recording of deeds of real property and shall be indexed against each declarant as the grantor and the name of the condominium as the grantee.

68 Pa.C.S. § 3201.

entity "Park View at Waverly, A Condominium" was not yet created at the time R&L and Waverly Woods entered into the AIA contract, the intention to create a condominium is apparent by the terms of the contract wherein the "project" is labeled as "Parkview @ Waverly - Phase 7" and the "work" to be completed is the "construction of ninety-one (91) townhouse condominiums." (AIA Agreement, Doc. 98, Exh. A.) If condominium units were to be constructed as stated in the contract, it was certainly intended, and indeed it was *required* that a declaration of condominium be recorded to legally create the condominium which was formally executed on May 24, 2007, creating Park View.

Thus, it is apparent that Park View passes the two-part Restatement test to be considered an intended third-party beneficiary. The first part of the test requires that the recognition of the beneficiary's right to performance be "appropriate to effectuate the intention of the parties." RESTATEMENT OF CONTRACTS, § 302(1). As stated, if the purpose of the AIA contract was to construct condominium units, the only discernable intent of the contracting parties was to create a legally-formed condominium in accordance with Pennsylvania law. Waverly Woods in fact did so, creating Park View. Accordingly, the court finds as a matter of law that recognition of Park View as a third-party beneficiary would be appropriate.

The second prong of the test is a two-part "either/or" test, and satisfaction of either part establishes the third party as an intended third-party

16

beneficiary.  RESTATEMENT OF CONTRACTS, § 302(1)(a) & (b).[8]   The second part of

this prong is relevant here and requires that the promise is intended to give the

beneficiary the benefit of the promised performance.  RESTATEMENT OF

CONTRACTS, § 30 (1)(b).  Park View will pass this test if it is considered part of a

limited class intended to benefit from performance of the AIA contract.  *See*

*Scarpitti*, 609 A.2d at 151.  The court finds that it is.  Indeed, the only plausible

explanation for the AIA contract is that Waverly Woods intended to legally form a

condominium community, even if the name of that community was unknown at the

time the AIA contract was signed.[9]   In other words, Park View benefitted from the

AIA contract in that it owes its very creation to R&L's performance to that contract;

without the construction of condominium units, a legally-formed condominium

would not exist.  A finding that Waverly Woods intended to build condominium

units without any intention of creating a condominium in accordance with

Pennsylvania law would strain credulity.

Plaintiff also argues that Park View can not be a third-party beneficiary

as a result of contractual language that states that "The Contract Documents shall

---

[8]   The first part of this prong requires that the performance of the promise will satisfy an
obligation of the promisee to pay money to the beneficiary.  RESTATEMENT OF CONTRACTS, § 302(1)(a).
The beneficiary referred to in that section is often called a "creditor beneficiary" and is not applicable to
the present case.

[9]   It appears as though the name of the soon-to-be formed flexible condominium was
anticipated at the time the AIA contract was executed because Waverly Woods and R&L list the project
name as "Parkview @ Waverly – Phase 7."  (AIA Agreement, Doc. 98, Exh. A.)  Plaintiff distinguishes
"Parkview @ Waverly – Phase 7," the name of the project as it appears in the AIA contract, and "Park
View at Waverly, A Condominium," a flexible condominium pursuant to the PUCA.  (Doc. 98 at 5.)
However, the court does not find this distinction to be fatal to Park View's status as an intended
beneficiary.  Rather, the labeling of the project as "Parkview @ Waverly" seems indicative of the
parties' contemplation of the future existence of a condominium named Park View at Waverly.

not be construed to create a contractual relationship . . . between any persons or entities other than the Owner and Contractor." (Doc. 98, at 7, referencing General Condition § 1.1.2.) This language, however, does not preclude enforcement of the waiver clause against intended third-party beneficiaries. The only case identified by this court as instructive on this issue is *Vaughn, Coltrane & Assoc. v. Van Horn Constr.*, 583 S.E.2d 548 (Ga. App. 2002). There, the court analyzed the effect of nearly identical contractual language in an indemnification case. That case involved a contract between Keystone Food Corporation, as owner, and Van Horn Construction, as contractor. Following the death of a Van Horn employee on the work site, the employee's parents filed a wrongful death suit against, *inter alia,* two of Keystone's consultants who were not signatories to the contract. The consultants filed a third-party complaint seeking indemnification from Van Horn pursuant to a contract clause stating that Van Horn shall indemnify Keystone and Keystone's consultants against any claims or damages resulting from performance of the work. The trial court granted summary judgment for the contractor stating that the language limiting the contract between the owner and the contractor was intended to create no third-party beneficiaries. The trial court relied on *Walls, Inc. v. Atl. Realty Co.*, 367 S.E.2d 278 (Ga. App. 1988). In that case, the contract at issue stated the following: "[the contractor and the subcontractor] agree . . . this subcontract is solely for the benefit of the signatories hereto." *Id.* (quoting *Walls, supra.*)

The appellate court reversed on several grounds. First, the court found that the language in the contract in *Walls* specifically stated that the intent of the contract was to benefit only the signatory parties. Conversely, the language at issue in *Vaughn*, much like the language here, stated only that "the agreement documents

shall not be construed to create a contractual relationship between . . . any other persons other than the owner and the contractor." *Id.* at 550. Unlike the language in *Walls*, the court found that this language does not mean that "the parties intended that *no* others benefit from the construction contract" and that, if such was the intent of the parties, that intent should have been expressed in such unmistakable language as that seen in *Walls. Id.* (emphasis in original). Furthermore, in ascertaining the parties' intent, the court analyzed all the provisions of the contract. The court looked to the indemnification clause which not only applied to the signatory parties, but also to "consultants, agents, [and] employees." Based on this, the court found that the contract clearly contemplated a class of third-party beneficiaries because parties other than the signatories were intended to benefit from the indemnification clause. *Id.*

Here, the contractual language is nearly identical to that in *Vaughn*, and unlike *Walls*, does not express any clear language limiting the intent of the signatory parties. Moreover, the waiver clause, like the indemnification clause in *Vaughn,* refers to certain third parties including subcontractors, sub-subcontractors, agents and employees, the architect, and the architect's consultants. Thus, the contract, when read in full, does not specifically state that the parties intended that *no* others benefit and specifically anticipates that third parties can benefit by extending the waiver to other non-signatory parties. The fact that the contract does not create any additional contractual relationships does not undermine the court's analysis because a third party, by its very nature, is a non-signatory party to the contract, and thus a lack of a contractual relationship is presumed. The relevant question, already resolved, is whether the non-signatory third party is an intended third-party

beneficiary. Accordingly, the language in General Condition Section 1.1.2 does not serve to trump the well-established rule that intended third-party beneficiaries may bring claims pursuant to, or may be subject to defenses contained in, the underlying contract, even in the absence of a contractual relationship.

Lastly, Plaintiff argues that a party not in existence at the time a contract is formed can not be an intended third-party beneficiary. (Doc. 98 at 10-12.) Plaintiff relies exclusively on the Philadelphia Court of Common Pleas decision in *Terra Equities, Inc. v. First Am. Title Ins. Co.*, 56 Pa. D.&C. 4th 423 (Pa.Com.Pl. 2001). In that case, Commerce II, a general partner of the plaintiff Terra Equities, argued that it was an intended third-party beneficiary of an insurance policy provided by the defendant in relation to real property located in Florida. The court found that "it does not appear that Commerce II was in existence at the time First American issued the relevant insurance policy" and held that "this prevents Commerce II from being considered an intended beneficiary." *Id.* at 433. Notwithstanding the non-binding nature of that holding on this court, the court does not find it otherwise applicable to this case. Although it is true that Park View was not legally formed until the declaration of condominium was recorded, which occurred approximately a year and a half after the AIA contract was entered into, to hold that this fact automatically divests Park View of intended third-party beneficiary status appears to be contrary to *Scarpitti* and the Restatement, neither of which require that a party physically exist at the time an agreement is entered into in order to be an intended third-party beneficiary. Rather, the applicable test is whether the party claiming beneficiary status was part of the limited class intended to benefit from the underlying agreement. RESTATEMENT OF CONTRACTS, § 302(1);

*Scarpitti*, 609 A.2d at 151.  The mere fact that Park View, although clearly contemplated, was not yet legally created when R&L and Waverly Woods entered into the AIA contract is not fatal to its status as an intended third-party beneficiary.

### B.   Judicial Admissions

Notably, until Defendants filed their motion for summary judgment based on the waiver of subrogation clause, Plaintiff also considered Park View a third-party beneficiary of the AIA contract.  In its original complaint, CAUA repeatedly alleged that prior to the fire, pursuant to an agreement between R&L "and some other entity of which Park View was a third-party beneficiary, Rhodes was hired as the general contractor for the construction of the Park View condominiums at Waverly Condominiums . . . ." (Doc. 1, Original Compl. ¶¶ 12, 22, and 31.) Plaintiff also claimed in its original complaint that Park View was a third-party beneficiary of the subcontract between R&L and Adams for drywall installation at the subject property (*Id.* ¶ 13) as well as the sub-subcontracts between Adams and Barb and Quintero (*Id.* ¶ 14, 31).  However, on April 13, 2011, this court granted Plaintiff's motion to amend its complaint over Defendants' objection that doing so would permit Plaintiff to delete any language claiming that Park View is a third-party beneficiary causing Defendants to suffer undue prejudice with regard to the waiver of subrogation argument.  (Doc. 89.)  Addressing this issue, the court's order stated, in part:

> Defendant is correct that allegations plead by Plaintiff in the original complaint constitute judicial admissions, however Plaintiff is not prevented from amending these admissions.  *Gerlach v. Volvo Cars of North America*,

1997 U.S. Dist. LEXIS 3097 (E.D. Pa. March 17, 1997). That said, "when leave to amend is granted, the allegations in the original pleading continue to constitute binding judicial admissions of a party." *Id.* at *10, n.2. "Even after it has been superseded, an original pleading may be entered into evidence and used to establish an admission." *Id.* (citing Federal Rule of Evidence 801(d); *Johnson v. Goldstein*, 864 F. Supp. 490 (E.D. Pa. 1994)(stating that "a party may offer so-called 'abandoned pleadings' into evidence, so long as the other side has an adequate opportunity to explain the pleading" because abandoned pleadings are admissible as an admission of a party opponent under Federal Rule of Evidence 801(d)), *aff'd* 66 F.3d 311 (3d Cir. 1995). Moreover, "it has been recognized as an abuse of discretion for a court to deny the entry of a prior pleading into evidence." *Gerlach*, at *10, n.2 (referencing *Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989)). Accordingly, Defendants concern that amending the complaint would "eviscerat[e] the basis for the joint defense motion" is unfounded because, notwithstanding the filing of an amended complaint, Defendants are free to introduce any admissions in the original pleading. Thus, the court finds that Defendants will suffer no undue prejudice on this basis.

(Doc. 89, at 7-8.) Although caselaw appears to render the statements in the original complaint something less than conclusive judicial admissions, the court is nevertheless free to take such statements into account. Having done so here, the court finds that these statements, when viewed in conjunction with the other circumstances and evidence indicating the parties' intent, bolster the court's finding that Park View is an intended third-party beneficiary to the AIA contract.[10]

---

[10] The original complaint also brought a claim for breach of contract. This is consistent with CAUA's assertion in the original complaint that Park View is a third-party beneficiary because, otherwise lacking privity, Plaintiff can only bring a breach of contract claim if it can be established that Park View is a third-party beneficiary. *See Am. Stores Properties v. Spotts, Stevens, & McCoy, Inc.*, 651 F. Supp. 2d 349 (E.D. Pa. 2009) (allowing a breach of contract claim because, notwithstanding Plaintiff's lack of privity to the underlying contract, Plaintiff sufficiently established that it is a third-

(continued...)

### C.    CAUA's Lack of Notice of the Waiver Is Inconsequential

Plaintiff further argues that the waiver is inapplicable to Park View because "Plaintiff was not even in possession of the AIA contract until it was produced in discovery by R&L.  Waverly Woods – which is not a party to this suit – is not, and has never been, insured by Plaintiff."  (Doc. 98 at 3.)  This is unpersuasive however, because Pennsylvania courts have held that waiver of subrogation clauses are enforceable against insurers, even where the insurer is not a party to the contract, has no notice of the provision, and did not consent to the provision.  *See Universal Underwriters Ins. Co. v. A. Richard Kacin, Inc.*, 916 A.2d 686, 694 (Pa. Super. 2007).  The court in *Universal Underwriters* reasoned that the doctrine of subrogation is derivative in nature, placing the subrogee "in the precise position of the one to whose rights and disabilities he is subrogated."  *Id.* (quoting *Church Mutual Ins. Co. v. Palmer Constr. Co., Inc.*, 153 F. App'x 805, 808 (3d. Cir. 2005) (unpublished opinion)).  Thus, the insurer is placed in the same position as the subrogor, irrespective of the insurer's lack of notice or intent to be bound to the terms of the contract.  Having already found that Park View is an intended third-party beneficiary to the AIA contract, the fact that CAUA was not a party and apparently had no notice of the contract is inconsequential; because Park View is

---

[10](...continued)
party beneficiary).  Moreover, the breach of contract claim is also consistent with the court's finding that Park View is an *intended* third-party beneficiary because an incidental beneficiary has no standing to bring a breach of contract claim.  *See Meyers Plumbing & Heating v. West End Fed. Sav. & Loan Assoc.*, 498 A.2d 966, 969 (Pa. Super. 1985) ("As an incidental beneficiary, appellant acquires no rights against the promisor or promisee.").  The breach of contract claim was also withdrawn in the amended complaint.

bound by the terms of the contract, so is CAUA.

### D.   Upholding the Waiver Satisfies the Intent of the Contracting Parties

Finally, this holding is consistent with the policies underlying waiver of subrogation clauses, which can be summarized as follows:

> On a construction project, the contractor risks liability for negligence and the owner risks damage to his property. The contractor purchases liability insurance and the owner purchases property insurance. If the contractor damages the owner's property, the owner or its property insurer (as subrogee) may sue the contractor for negligence. To prevent such litigation, an owner may waive its rights against the contractor for property damage to the extent covered by the owner's property insurance.

*Hunt Constr. Group, Inc. v. The Hun School of Princeton*, 2010 U.S. Dist. LEXIS 97421, at *31 (D.N.J. Sept. 16, 2010) (citing *St. Paul Fire v. Turner Constr. Co.,* 317 F. App'x 219 (3d Cir. 2009)).  Put another way, "the policy underlying [subrogation] clauses is to avoid disruption and disputes among the parties to the project.  The need for lawsuits between the parties is eliminated because all contracting parties are protected under the owner's property insurance." *Great Am. Ins. Co. of New York,* 730 F. Supp. 2d at 1317.  Although the AIA contract does not contain any provision explicitly stating the scope or length of the contract, a reading of the waiver indicates that Waverly Woods and R&L waived "all rights against each other and any of their subcontractors, sub-subcontractors, agents and employers . . . to the extent covered by property insurance . . . applicable to *the Work*."  (General Conditions, Doc. 98, Exh. B, Art. 11, § 11.3.7.) (emphasis added).

"Work" is defined in Section 1.1.3 as "construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations.  The Work may constitute the whole or part of the project."  (General Conditions, Doc. 98, Exh. B, Art. 1, § 1.1.3.)  In Article 2 of the AIA contract, labeled "WORK OF THIS CONTRACT," the contract states:

> The Contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows:
>
> Construction of ninety-one (91) townhouse condominium units including all related site work for the project known as Parkview @ Waverly - Phase 7.

(AIA Agreement, Doc. 98, Exh. A, Art. 2.)  Thus, the waiver of subrogation applies to "the work" which includes the construction of the condominium units.  Accordingly, these provisions indicate that R&L and Waverly Woods intended to avoid disputes and limit litigation while construction was ongoing.  If either party intended to limit the scope or length of the contract, they could have added a termination clause or other limiting language to that effect.  Here, the work was still ongoing at the time of the fire in March 2008.  By enforcing the waiver against CAUA and granting summary judgment for Defendants, the court is upholding the contracting parties' intent of limiting litigation relating to construction of the condominium units.

**IV.**          <u>**Conclusion**</u>

In short, Waverly Woods and R&L entered into an AIA contract to construct condominium units.  Waverly Woods subsequently transferred the subject real estate to Park View, as required under state law, making Park View an intended third-party beneficiary to the contract.   As subrogee to Park View, CAUA is also bound to the terms of the AIA contract, thus making the waiver of subrogation applicable to CAUA.  In so holding, the policy of waivers of subrogation clauses to avoid litigation while construction is ongoing is upheld.  Accordingly, Defendants' summary judgment motion will be granted.

An appropriate order will be issued.


<u>S/Sylvia H. Rambo</u>
United States District Judge


Dated: July 29, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COMMUNITY ASSOCIATION** | : | |
| **UNDERWRITERS OF AMERICA,** | : | |
| **INC. A/S/O PARK VIEW AT** | : | |
| **WAVERLY, A CONDOMINIUM** | : | **CIVIL NO. 1:09-CV-0257** |
| **C/O PMI MANAGEMENT,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **RHODES DEVELOPMENT GROUP,** | : | **Judge Sylvia H. Rambo** |
| **INC. A/K/A RHODES** | : | |
| **DEVELOPMENT CORP. A/KA/ R&L** | : | |
| **CONSTRUCTION COMPANY,** | : | |
| **ADAMS DRYWALL, and PEDRO** | : | |
| **YAHUITL QUINTERO,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' motion for summary judgment (Doc. 95) is **GRANTED.** The clerk of court shall enter judgment in favor of Defendants and against Plaintiff. All other motions presently pending before the court are deemed **MOOT.** The clerk of courts is directed to close the case.

S/Sylvia H. Rambo
United States District Judge

Dated: July 29, 2011.