NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3343

_____

COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA,
A/S/O Park View at Waverly, A Condominium C/O/ PMI Management
Appellant

v.

RHODES DEVELOPMENT GROUP, INC., et.al.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 1-09-cv-00257)
District Court Judge: Honorable Sylvia H. Rambo

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 11, 2012

Before:  RENDELL, GARTH and BARRY, *Circuit Judges*.

(Filed: July 12, 2012)

_____

OPINION OF THE COURT

_____

GARTH, *Circuit Judge*.

On December 1, 2005, Waverly Woods Associates ("Waverly Woods") entered into a construction contract with defendant Rhodes Development Group ("Rhodes"). Rhodes agreed to serve as the general contractor to build a number of townhouse

1

condominiums on Waverly Woods' land. The construction contract included a clause entitled "Waivers of Subrogation," which provided in relevant part that:

> The Owner [Waverly Woods] and Contractor [Rhodes] waive all rights against . . . each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other . . . for damages caused by fire or other perils to the extent covered by property insurance applicable to the Work . . . .

After the construction contract was executed, Rhodes subcontracted with a number of other entities, including defendant Adams Drywall, who agreed to install the condominiums' drywall. Adams Drywall entered into an oral subcontract with defendant Pedro Quintero ("Quintero") to perform the labor for the drywall installation.

On May 24, 2007, Waverly Woods created a condominium association called "Park View at Waverly" ("Park View"), and transferred the condominiums and land to Park View. Park View thereafter obtained an insurance policy issued by the plaintiff, Community Association Underwriters of America ("CAUA"), to cover the condominium units.

On March 4, 2008, a fire at Park View damaged several condominiums. Park View submitted a claim for damages to CAUA, which paid the claim. CAUA subsequently sought to recover the insurance payments from the parties it claimed were responsible for the fire. CAUA filed a complaint asserting claims for both negligence and breach of contract against Rhodes, Adams Drywall, and Quintero. In its complaint, CAUA alleged that the fire was caused by the negligent placement and handling of propane heaters used during the installation of the drywall. CAUA also claimed that this

negligence "breached the express and implied terms of the contract[s]" between Waverly Woods and Rhodes, as well as between Rhodes and the subcontractors.

On March 25, 2011, CAUA sought to amend its complaint to remove the breach of contract claims and deleted from the Amended Complaint all allegations that Park View was a third-party beneficiary to the contracts. On April 13, 2011, the District Court granted the motion to amend. Thereafter, CAUA's complaint alleged one cause of action against Rhodes for negligence and one cause of action against Adams Drywall and Quintero for negligence. In their answers, the defendants crossclaimed against one another.

On April 27, 2011, following CAUA's amendment of its complaint, the defendants filed amended motions for summary judgment based upon the waiver of subrogation, arguing that Park View was an intended third-party beneficiary of the construction contract. The District Court ultimately granted summary judgment, concluding that Park View and CAUA were intended third party beneficiaries of the contract, and were therefore bound by the waiver of subrogation clause. CAUA appealed. No mention appeared in the District Court's opinion as to the negligence counts in the Amended Complaint.

I.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and this Court has jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment, viewing all evidence in favor of the non-moving party and resolving all doubts in that party's favor. *S.E.C. v. Hughes Capital Corp.*, 124

F.3d 449, 452 (3d Cir. 1997). Summary judgment should not be granted if the non-moving party produces evidence that "could be the basis for a jury finding in that party's favor." *Kline v. First Western Gov't Sec.*, 24 F.3d 480, 485 (3d Cir. 1994). Similarly, summary judgment should not be granted unless "legal theory or doctrine supports the movant's position that judgment should be entered." 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2725.

II.

On appeal, the parties dedicated the whole of their briefs to the applicability of the waiver of subrogation clause—CAUA argues that it is not an intended third party beneficiary,[1] and thus is not subject to the waiver clause. Rhodes, Adams Drywall, and Quintero argue the reverse.

It is established law in this Circuit that "a third party beneficiary will only be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third party beneficiary status." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 197 (3d Cir. 2001). As a consequence, the waiver of subrogation clause only applies to CAUA (a non-party to the contract) to the extent that it asserts claims arising under that contract.

Our review of CAUA's Amended Complaint reveals that it is no longer making any contract claims—to the contrary, both counts alleged in its Amended Complaint are styled as counts of negligence, and both counts sound exclusively in the tort law of

---

[1] In its original complaint, CAUA asserted that it was an intended third party beneficiary to the contract between Rhodes and Waverly Woods.

4

negligence.[2] We are therefore compelled to conclude that CAUA's status as an intended third party beneficiary of the original contract is not relevant to the disposition of the present matter. The waiver of subrogation did not waive CAUA's claims of negligence, and it is only claims of negligence which CAUA has alleged.

III.

In disposing of this matter on the basis of the waiver of subrogation, the District Court declined to consider the defendants' motions for summary judgment based on spoliation of evidence or a deficient expert report,[3] both of which pertain to negligence causes of action which have no relevance to the claims of contract argued by the parties.

Inasmuch as it was error to grant summary judgment on the basis of the waiver of subrogation, the District Court must now consider those motions before proceeding to the merits of CAUA's claims of negligence, and, if necessary, the defendants' crossclaims.

Accordingly, we will vacate the District Court's order of July 29, 2011 and remand for further proceedings consistent with this opinion.[4]

---

[2] Count 1 seeks recovery from Rhodes for monies which CAUA paid to Waverly; Count 2 seeks recovery from Adams Drywall and Quintero for the same monies.

[3] In footnote 2 of its opinion, the District Court stated that "[t]he parties submitted numerous additional facts in connection with Defendants' motions for summary judgment based on spoliation and a deficient expert report, including a time line detailing the alleged events on the days following the March 4, 2008 fire. Many of these facts, however, are not relevant to Defendants' waiver of subrogation argument. For clarity of the record, the court will only recite facts related to Defendants' waiver argument." *See CAUA v. Rhodes, et.al.,* No. 1:09-CV-0257, (M.D.Pa. July 29, 2011), n.2.

[4] Federal Rule of Appellate Procedure 30, "Appendix to the Briefs" requires that ". . . the relevant portions of the pleadings . . ." *must* be included in the appendix. Neither the original complaint nor the Amended Complaint, which is essential to the resolution of

---

this appeal, was included in the appendix. It is unacceptable that counsel is not familiar with and did not comply with the basic rules of appellate procedure.

RENDELL, Circuit Judge, concurring

It is unclear to me whether the third party beneficiary question should be the basis for the District Court's dismissal of the case. Clearly, the Majority believes that it should not. We need not resolve this issue, however, because I agree with the Majority that CAUA's claims for negligence should proceed. Whether or not the third party beneficiary question controls, the result is the same: the dismissal was not appropriate. I write separately to explain why this is so if the third party beneficiary principles do apply.

Pennsylvania has adopted the Restatement (Second) of Contracts test for determining whether a party is an intended third party beneficiary. *See Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983). According to that test, a party is an intended third party beneficiary when "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties" and, in relevant part, the circumstances "indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Rest. (2d) of Contracts § 302(a). If the parties' intent to benefit a third party is not express in the contract, there must be "circumstances that are so compelling" before we recognize a third party beneficiary as an intended one. *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992).

There is insufficient evidence, in the terms of the contract and in the circumstances surrounding its making, demonstrating that Waverly Woods and Rhodes intended to benefit Park View. The only evidence in the contract itself that might suggest an intent to benefit Park View is Article 2, captioned "The Work of this Contract." Article 2 describes the scope of work of the contract as "Construction of ninety-one (91)

1

townhouse condominium units including all related site work for the project known as Parkview @ Waverly – Phase 7." (App. 65a.) The District Court reasoned that, because the parties were building condominiums, they therefore intended that a condominium association be formed. Accordingly, the parties must have intended to benefit Park View. While the District Court's inferences in this regard are logical, they are not evidence of intent. Instead, we must look to the terms of the contract and the circumstances surrounding its making to determine whether the parties evidence an intent to benefit a third party.

In *Lake Placid Club Attached Lodges v. Elizabethtown Builders, Inc.*, 521 N.Y.S.2d 165, 166 (N.Y. App. Div. 1987), the plaintiff, an unincorporated joint venture comprised of owners of residential condominium units, sued the builder of the condominium for breach of the contract between the developer and the builder. Applying the test set forth in § 302 of the Restatement, the court held that the joint venture was not an intended beneficiary of the contract between the developer and builder because there was no evidence from the "contractual language or other circumstances manifesting a mutual intent of the contracting parties to confer rights to performance on the ultimate owners of the units." *Id*. The court continued, "indeed, there is nothing whatsoever in the record to suggest that the developer had in mind anything but the normal business motive to obtain a construction project of sufficient quality for ready marketability of the condominium units to potential customers." *Id*. I believe that the same is true here.

Indeed, the contract actually evidences an intent *not* to benefit Park View. The contract states that "The Contract Documents shall not be construed to create a

2

contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor or (3) between any persons or entities other than the Owner and Contractor." (App. 78a.) The District Court rejected CAUA's argument regarding this provision based on *Vaughn, Coltrane & Associates v. Van Horn Construction, Inc.*, 563 S.E.2d 548 (Ga. App. 2002), which held that, notwithstanding a similar provision disclaiming the creation of any contractual relationships, the contracting parties may still intend to benefit a third party. *Vaughn* is distinguishable, however, because there, the consultants seeking third party beneficiary recognition relied on language elsewhere in the contract which explicitly provided a right of indemnification to the consultants. *See id.* at 550. Here, there is no other language in the contract upon which the Park View could rely to claim third party beneficiary status.

More importantly, we have held that a "no contractual relationship" clause is evidence of the contracting parties' intent *not* to create any third party beneficiaries. In *Pierce Associates, Inc. v. Nemours Foundation*, 865 F.2d 530, 537 (3d Cir. 1988), we reasoned that a nearly-identical disclaimer "is a strong indication of an intent" not to benefit a third party. In holding that the plaintiff was not an intended third party beneficiary of the subcontract, we emphasized that in construction contracts, "the owner is the one who ultimately benefits from its performance. However, this does not create a third party beneficiary relationship." *Id.*; *see also Dick Anderson Constr., Inc. v. Monroe Constr. Co.*, 221 P.3d 675, 686 (Mont. 2009) (viewing a similar disclaimer as "preclud[ing] anyone . . . from claiming third-party beneficiary status under the contract."); *Yaffe v. Scarlett Place Residential Condo., Inc.*, -- A.3d -- , 2012 WL

3

1998066 (Md. Ct. Spec. App. 2012) (viewing "no contractual relationship" disclaimer as evidence that contracting parties did not intend to confer third party beneficiary status on condominium unit owner who sought to enforce contract between condominium developer and contractor).

Moreover, the District Court erred in considering the Declaration of Condominium filed by Waverly Woods pursuant to 68 Pa. C.S. § 3201 as evidence of the parties' intent to benefit Park View. Whether parties intend to benefit a third person must be "within the contemplation of the *promisor and the promisee at the time of contracting.*" *Scarpitti*, 609 A.2d at 151 (emphasis added). The Declaration of Condominium was executed over a year after Rhodes and Waverly Woods entered into the contract, and is evidence only of Waverly Woods' intent.

In sum, the lack of evidence showing an intent to benefit Park View, coupled with the "no contractual relationship" disclaimer, compels our conclusion that Park View is not an intended third party beneficiary to the contract. Therefore, the waiver of subrogation does not apply to CAUA's claims. Accordingly, I agree that we should vacate the judgment of the District Court.