IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC. A/S/O PARK VIEW AT WAVERLY, A CONDOMINIUM C/O PMI MANAGEMENT, | : : : : : | CIVIL NO. 1:09-CV-0257 |
| **Plaintiff** | : : | |
| v. | : : | |
| RHODES DEVELOPMENT GROUP, INC. A/K/A RHODES DEVELOPMENT CORP. A/KA/ R&L CONSTRUCTION COMPANY, ADAMS DRYWALL, and PEDRO YAHUITL QUINTERO, | : : : : : : | Judge Sylvia H. Rambo |
| **Defendants** | : : | |

## M E M O R A N D U M

This case involves a subrogation claim filed by Community Association Underwriters of America, Inc. ("CAUA"), wherein CAUA seeks to recover payments made to Park View at Waverly, a Condominium ("Park View") as a result of a fire that occurred on March 4, 2008. Before the court are four motions for summary judgment, all filed by Defendants. Defendants filed three separate but similar motions seeking summary judgment, raising spoliation of evidence as a result of Plaintiff's alleged tampering with the fire scene during the demolition process. (Docs. 43, 49, & 50.) Defendants also filed a joint motion for summary judgment on grounds that Plaintiff's expert report is deficient because it fails to sufficiently state the basis for the expert's opinion as required under Federal Rule of Civil Procedure 26(a)(2)(B). (Doc. 45.) The motions have been fully briefed and are ripe for disposition. For the reasons set forth below, Defendants' individual motions for

summary judgment based upon spoliation of evidence will be denied. The court, will, however, permit a jury instruction at trial as to the "spoliation inference." Defendants' joint motion for summary judgment on the grounds of an insufficient expert report will also be denied.

## I.    **Background**

### A.    **Facts** [1]

This case arises out of a fire that occurred on March 4, 2008, at Park View, located in Swatara Township, Dauphin County, Pennsylvania. Plaintiff, CAUA, insures the condominium association for Park View. On December 1, 2005, Waverly Woods Associates ("Waverly Woods"), the original owner and developer of Park View, entered into a standard American Institute of Architects contract ("AIA contract") with R&L Construction Company (R&L) whereby R&L was to be the general contractor for construction of the condominium units. R&L subsequently entered into a written subcontract with Adams Drywall, Inc. ("Adams"), whereby Adams was to install drywall in, among other units, Unit 417. Thereafter, Adams entered into oral subcontracts with Alan Barb[2] and Pedro Quintero ("Quintero"). The work performed by Quintero is commonly referred to as "finish" work, which

---

[1]    In *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148-49 (3d Cir. 2002), the Third Circuit reaffirmed its supervisory rule first announced in *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 259 (3d Cir.1990) that "the district courts in this circuit [must] accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order." *Vadino*, 903 F.2d at 259. Here, the court will identify those facts that are subject to genuine dispute, and cite to the record in order to highlight the precise nature of any disputed facts. The court will not cite to the record where the facts are undisputed; instead, the court will rely on the statements of material fact and admissions submitted by the parties. The materiality of any genuinely disputed facts will be analyzed in the discussion section below.

[2] Alan Barb was dismissed as a co-defendant by stipulation of the parties.

involves placing tape over joints between abutting sheets of drywall after they have been hung, and then applying a joint compound over the joints in three separate applications. The joint compound requires time to dry and, typically, each successive layer is not applied until the previous application has dried. In this instance, a heat source was necessary to prevent the drywall from freezing and cracking as a result of the cold weather prevailing at the time. Here, R&L provided propane-fired portable heaters and tanks of propane gas to be used by the subcontractors, including Quintero.

The fire on March 4, 2008, was first reported to authorities at 6:34 a.m. The condominium units involved in the fire were units 411, 413, 415, 417, 419, and 421. Unit 417 was the only unit under active construction at the time. Unit 417 was the most heavily damaged by the fire and is suspected to be where the fire originated. Susquehanna Township Fire Marshal George Drees ("Drees") was at the fire scene shortly after the outset of the fire and remained there until approximately 12:30 p.m. on March 4, 2008. Drees interviewed Quintero at the scene of the fire on March 4, 2008. That same day, Drees determined that it was necessary to delaminate, or excavate, the areas of the structure affected by the fire, however, the delamination process did not begin immediately. Bill Walsh, the executive adjuster assigned by CAUA to handle the subject claim and CAUA's subrogation interest, retained attorney Daniel de Luca on March 4, 2008.

On the morning of March 5, 2008, Drees met with Tom Minnich, a representative of Kufta Associates, which is serving as Plaintiff's "origin and cause" expert. Drees and Minnich reviewed the scene and Minnich retained Bernard Anthony of Bernard Anthony Enterprises ("Anthony") to commence demolition on

March 6, 2008.  No demolition occurred on March 5, 2008.  Plaintiff's Attorney de Luca faxed a letter dated March 5, 2008, to Adams and R&L.  The letter was not sent to Quintero or Quintero's insurance carrier, Northland Insurance Company.  In that letter, Attorney de Luca states, in part:

> A **follow up inspection will take place in the next two days - tomorrow wand** [sic] **Friday - at this property, and you and/or your carrier are invited to attend.** Either way, please know that due to the dangerous condition of the property, it is expected that repair/demolition efforts will begin soon, <u>so time is of the essence here</u>.

(Doc. 52-1, Ex. K.)

On March 6, 2008, Anthony arrived at the scene at approximately 8:00 a.m. to commence demolition.  However, demolition did not commence until 10:00 a.m. when Bradley Schriver, who replaced Tom Minnich as plaintiff's expert, arrived at the scene.  The parties dispute precisely who was "in charge" at the fire scene.  Defendants contend that Schriver was directing Anthony where to dig.  (Doc. 43, Quintero's Mot. for Sum. J., ¶ 26.)  Plaintiff, meanwhile, contends that Fire Marshal Drees was "in charge of the scene" on March 6, 2008.  (Doc. 52, Pl.'s Resp. in Opp. to Quintero's Mot. For Sum. J., ¶ 34.)  At his deposition, Drees testified that the scene was handled in a "unified approach" between himself, Pennsylvania State Police, and county fire inspectors.  (Doc. 43-4, Ex. A, Drees Dep., p. 81.)  Anthony similarly testified that the decision-making process regarding the delamination of the scene was "collaborative."  (Doc. 52-1, Ex. B, Anthony Dep., p. 81.)

During his investigation, Drees determined that the first and second floors of Unit 417 had collapsed into the basement as a result of the fire.  As debris was removed from the basement on March 6, 2008, Anthony discovered a portable

propane gas-fired heater in the basement.  Upon locating the heater, it was photographed and measured by Fire Marshal Drees, and then removed from the scene and placed in Anthony's pickup truck.  After the heater had been removed, Michael Moyer, an "origin and cause" expert retained by Defendant Adams on March 6, 2008, arrived at the scene that same afternoon.  When he arrived at the scene, Moyer made visual observations of the scene, took notes, made sketches, and observed and photographed the propane heater, which had been removed from Anthony's pickup truck for inspection.  The propane heater was then relocated to a warehouse owned by Kufta & Associates.

By letter dated March 10, 2008, from Adams's Insurer, Penn National Insurance, Quintero and Northland Insurance Company were informed of a potential claim against Quintero.  Quintero was not otherwise informed that demolition of the fire scene had already commenced.

In accordance with the Case Management Order issued in this case, Plaintiff provided Defendants with copies of various expert liability reports, including reports from Fire Marshal Drees as well as from Schriver.  The report by Schriver provided, in part, as follows:

> Upon completion of the excavation of the basement level, the only heat sources capable of igniting a fire were identified as the electrical system and the propane-fired heater.  In reviewing reports by Engineering Consultants Larry Wharton and Michael Wald/Raymond Sofield, it is evident that they were able to successfully conclude that the fire was not the result of an electrical failure.
>
> In conclusion, based on the scene examination and information learned during the course of the investigation, it is the opinion of this investigator that the cause of the fire was attributed to the improper use of the propane-fired portable heater that was left energized overnight for the

curing of drywall on the first floor level of 417 Parkview Drive.

(Doc. 43-15, Report of Bradley A. Schriver, Kufta Associates.) Plaintiff also retained Michael E. Wald and Raymond Sofield of IEI Consulting, Inc., who concluded, in part, as follows:

> The evidence is thus quite clear that there is no possibility that this fire was caused by any electrical malfunctions or failures. None of the wiring within the walls or electrical devices anywhere near the origin area of this fire were even energized and thus could not cause a fire under any circumstances. The gas-fired portable heater remains the only identified source of ignition for this fire. Improper use of a portable heater is a well known and well recognized cause of fires in construction settings.

(Doc. 55-1, Ex. G, Report of Michael E. Wald and Raymond Sofield, IEI Consultants, Inc.)[3]

## B. Procedural History

On February 9, 2009, Plaintiff filed a complaint against Defendants R&L, Adams, Quintero, and Barb, alleging negligent use and placement of the propane heater and breach of contract. (Doc. 1.) Defendant Barb was later dismissed by stipulation. (Doc. 48.) Plaintiff failed to serve Defendant Quintero, however, and therefore a separate complaint was filed solely against Defendant Quintero on December 10, 2009, also alleging negligence and breach of contract. (Docket No. 1:09-CV-02431, Doc. 1.) This court granted consolidation on February 16, 2010. (Doc. 39.)

---

[3] At this point, it is not clear whether Defendants are in receipt of this report. In Defendants' joint motion for summary judgment, Defendants state "Except for the Schriver report, Plaintiff has not produced any other expert reports which conclude that the fire was somehow caused by the propane-fired portable heater." (Doc. 45, ¶ 21.) Plaintiff denies this assertion, stating that the Wald and Sofield expert report also concludes that the heater was the cause of the fire. (Doc. 55, ¶ 21.) The reason for this contradiction is unclear.

On November 12, 2010, Defendant Quintero filed a motion for summary judgment (Doc. 43) and brief in support (Doc. 44) raising the issue of spoliation of the fire scene. On November 15, 2010, Defendants jointly filed a motion for summary judgment (Doc. 45), a brief in support (Doc. 46), and a statement of material facts (Doc. 47), arguing for the preclusion of Schriver's expert report. That same day, Defendant R&L filed a motion for summary judgment (Doc. 49), as did Defendant Adams (Doc. 50), which was accompanied by a brief in support. (Doc. 51.) Both motions similarly raised spoliation of the fire scene. Plaintiff filed briefs in opposition to each of Defendants' motions. (Docs. 52, 53, 54, 55, & 56.)

While those motions were pending, Defendants filed a joint motion for summary judgment on February 14, 2011, based on a waiver of subrogation clause incorporated into the AIA contract between the original owner, Waverly Woods, and the developer of the condominium complex, Defendant R&L. (Doc. 67.) However, on April 13, 2011, this court granted Plaintiff's motion to amend its complaint and accepted for filing the proposed amended complaint. (Doc. 89.) In doing so, Plaintiff withdrew the breach of contract claim and also deleted any language from the original complaint claiming that Park View is a third-party beneficiary to any agreement between any other parties or non-parties to this action (e.g., the AIA contract). (Doc. 90.) On April 27, 2011, Defendants filed a joint amended motion for summary judgment, again arguing for a grant of judgment based upon the waiver of subrogation, and a brief in support thereof. (Docs. 95 & 96.) On July 29, 2011, the court granted this motion, finding that the waiver of subrogation clause to be applicable to this cause, thus barring suit. (Doc. 104.) On July 12, 2012, the Third

Circuit Court of Appeals reversed, finding that a waiver of subrogation clause is not applicable in subrogation cases sounding only in negligence.  (Doc. 109.)  On August 22, 2012, the Third Circuit vacated this court's July 29, 2011 order closing the case, and remanded for further proceedings.  (Doc. 110.)  On August 23, 2012, the court issued an order requesting status reports as to the remaining motions for summary judgment.  (Doc. 111.)  By way of letters dated September 4 and 5, 2012, the parties indicated their intent to stand on the previously filed motions.  (Docs. 112, 113, 114, & 115.)  Thus, those motions are ripe for consideration.

## II.        <u>Standard</u>

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment.  Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 248.  When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same.  *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat. Ass'n,* 601 F.3d 212, 216 (3d Cir. 2010). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III. <u>Discussion</u>

Defendants argue that judgment should be granted in their favor because Plaintiff failed to preserve critical evidence. Specifically, Defendants argue that the removal of the propane heater by Anthony on March 6, 2008, prejudiced Defendants because their experts did not have the opportunity to examine the scene

untouched and rebut Plaintiff's expert's conclusions. Defendants further argue that the conclusion of Plaintiff's expert Schriver should be precluded because it fails to adequately state the basis of his opinion, in contradiction to Federal Rule of Civil Procedure 26(a)(2)(B). The court will address each argument in turn.

## A. Spoliation

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Indemnity Ins. Co. of N. America v. Electrolux Home Prods.*, 2011 U.S. Dist. LEXIS 140911, *11 (E.D. Pa. Dec. 7, 2011). A party that reasonably anticipates litigation has a duty to preserve relevant evidence. *Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994). Where evidence is destroyed, sanctions may be appropriate, including the outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the "spoliation inference." *Howell v. Maytag*, 168 F.R.D. 502, 505 (M.D. Pa. 1996). The "spoliation inference" instruction permits the jury to assume that "the destroyed evidence would have been unfavorable to the position of the offending party." *Id.* (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994)). The appropriate sanction will depend on the facts and circumstances of the case. *Schmid*, 13 F.3d at 81. The court should "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Id.* at 79 (quoting *S.D.I. Operation P'ship L.B. v. Neuwirth*, 973 F.2d 652 (8th Cir. 1992)).

In *Schmid*, the court explained that a request for spoliation sanctions should be considered in the context of "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the

10

opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Id.* For the reasons explained below, the court finds a jury instruction on the "spoliation inference" is the most appropriate remedy based on the record presently before the court.

### 1. Fault

In the spoliation analysis, "[f]ault has two components: responsibility, and the presence of bad faith." *N.J. Mfrs. Ins. Co. v. Hearth & Home Techs., Inc.*, 2008 U.S. Dist. LEXIS 49911, *21 (M.D. Pa. June 25, 2008) (quoting *Mount Olivet Tabernacle Church v. Edwin L. Weigand Div.*, 781 A.2d 1263, 1270 (Pa. Super. Ct. 2001)). As to the bad faith prong, the court does not find, and Defendants do not specifically argue that Plaintiff, or its agents, acted in bad faith. Thus, the focus of the fault analysis will center on the first component, responsibility.

As stated, a party to a lawsuit, and its agents, have an affirmative duty to preserve relevant evidence where a plaintiff knows that litigation against a defendant is likely, and it is foreseeable that discarding the evidence would be prejudicial to the defendants. *See Howell*, 168 F.R.D. at 505. These principles hold true whether the plaintiff is an insured or an insurer pursuing a subrogation claim. *See Baliotis*, 870 F. Supp. at 1290.

Here, there is no question that litigation was foreseeable. Plaintiff retained Attorney de Luca on March 4, 2008, in anticipation of said litigation. Thus, Plaintiff was under a duty to preserve evidence. However, the scope of the duty to preserve is not boundless. *Id.* Generally, there is no blanket rule that plaintiffs must always preserve an entire fire scene. *See N.J. Mfrs. Ins. Co.*, 2008 U.S. Dist. LEXIS

11

49911, at *22 (citing *Mount Olivet*, 781 A.2d at 1271 n.6, and *Pia v. Perrotti*, 718 A.2d 321, 325 (Pa. Super. Ct. 1998)). However, Pennsylvania courts have set forth the following guidelines which are instructive to the court's analysis:

> At a minimum, if the plaintiff knows that a particular party is potentially responsible, in the absence of exigent circumstances the plaintiff should provide this party with the opportunity to inspect the evidence. [I]f the plaintiff's investigation reveals that a particular product may be the cause of the fire, the plaintiffs should preserve the product itself. If the investigation reveals alternative potential sources of the fire, these alternative sources should be preserved because they present clearly relevant defense evidence. [But], [i]f, on the other hand, the investigations of the plaintiff and independent experts reveal no alternative sources of the fire, the plaintiff may be considered less at fault of failing to preserve the entire fire scene, because there is no clearly relevant defense evidence to preserve.

*Mount Olivet*, 781 A.2d at 1271.

The issue here is not Plaintiff's failure to maintain the entire fire scene, but rather whether the removal of the propane heater prior to the arrival of any defense expert is sanctionable. Defendants assert that Attorney de Luca's March 5, 2008 letter, indicating that a follow-up inspection will take place "in the next two days" is misleading in light of the fact that the heater was removed from the fire scene the next morning. Defendants argue that "the result is that the defendants in this case were either not notified of the plaintiff's inspection, not properly notified of plaintiff's inspection, and/or the inspection went forward without due regard for the need to have all interested parties present and properly represented for the inspections and demolition process." (Doc. 49, ¶ 17.)

The court finds the amount of fault attributable to Plaintiff to be relatively low for several reasons. First, the record shows that neither Plaintiff nor

12

its agents were in full control of the fire scene during the inspections and demolition. Several courts have found that the plaintiff's power to control the scene and to exercise authority over the preservation or destruction of evidence is a relevant factor in determining responsibility. *See Howell*, 168 F.R.D. at 506; *Pia*, 718 A.2d at 324; *Mount Olivet*, 781 A.2d at 1271. Both Drees and Anthony testified that decisions regarding the delaminating process were "collaborative" and "unified," and input was provided by Pennsylvania State Police, fire inspectors, and Drees himself. Although Defendants contend that Plaintiff's expert, Bradley Schriver, was directing the delaminating process, it is beyond dispute that, at a minimum, Drees was on-site and in concert with any action that was taken. Thus, the court concludes that neither Plaintiff, nor any agent of Plaintiff, was in complete control of the fire scene or had exclusive authority regarding the preservation of evidence, thereby mitigating the amount of fault attributable to Plaintiff.

Further, it is without question that the prompt demolition of the fire scene was necessary. As Drees testified at his deposition, the scene presented a safety risk to the community, and was potentially an attractive nuisance to children and vagrants. (Drees Dep. p. 82.) Both Drees and Anthony testified that various walls of the property were unstable and created a potentially dangerous hazard. (*Id.*; Anthony Dep. p. 34.) Thus, the court finds sufficient exigencies existed in terms of securing and demolishing the fire scene to further mitigate Plaintiff's responsibility.

It does, however, appear that the subject heater could have remained in place without significant additional threat of harm or injury in order to provide a defense expert, who arrived several hours later that day, an opportunity to observe the scene untouched. Nevertheless, to say that Defendants Adams and R&L had no

knowledge of the demolition schedule would go too far. Indeed, the letter from Attorney de Luca, the very letter that Defendants contend misrepresents the planned demolition, forewarns that demolition would begin as soon as possible by stating: "[P]lease know that due to the dangerous condition of the property, it is expected that repair/demolition efforts will begin soon, so time is of the essence here." (Doc. 52-1, Ex. K) (emphasis in original.)

The fact that Attorney de Luca's letter was not sent to Defendant Quintero or his insurance carrier does not automatically tip the balance of the fault analysis in favor of Quintero. First, Plaintiff was not under a duty to identify *all* potential defendants and invite them to attend an exploratory investigation. *See Schmid*, 13 F.3d at 81 ("An across-the-board rule that would require an identification of all potential defendants at this nascent stage of the potential controversy and an invitation to each of them to attend an exploratory investigation would be inefficient, if not altogether unworkable."). Attorney de Luca sent the letter to Defendant R&L and the only known contractor at the time, Adams. That Attorney de Luca was unaware on March 5, 2008, that Adams had entered into an oral contract with Quintero is neither unsurprising nor unreasonable. Moreover, Quintero could have reasonably deduced his liability exposure because he was present at the scene the day of the fire and was interviewed by Drees. (Drees Dep. p. 20; Doc. 52-1, Ex. C, Quintero Dep., p. 33.) In short, the court does not find that the six-day delay between the date of the fire (March 4, 2008) and the March 10, 2008 letter to Quintero's insurance company places Plaintiff at a greater degree of fault.

Notably, this action is distinguished from those cases in which an allegedly faulty product in a products liability case disappeared and the defendants

14

were deprived of the opportunity to examine the item for possible misuse. *See Pia*, 718 A.2d at 325. Here, Defendants were able to examine the heater, which had been removed from its location at the fire scene but was still on-site, and may present a defense as to the accusation of negligence.

In short, the record at this point does not support a finding that Plaintiff acted in bad faith or with the intent to destroy potentially relevant evidence. The court nevertheless finds that Plaintiff should not be absolved from all responsibility for the removal of the propane heater prior to the arrival of any defense expert. Ideally, the involved parties should have waited several hours until defense expert Moyer arrived on the scene later that day. However, the degree of fault is partially mitigated in light of: (1) evidence that the fire scene was a potential safety hazard; (2) the fact that the known potential defendants were put on notice that the scene would need to be repaired/demolished as soon as possible; and (3) the presence and at least partial control of the fire scene by impartial fire officials, including Fire Marshal Drees.

## 2. **Prejudice**

The legal theory a plaintiff advances is relevant to determining the degree of prejudice to the defendant. *See N.J. Mfrs. Ins. Co.*, 2008 U.S. Dist. LEXIS 49911, at *28. Here, following the withdrawal of the Plaintiff's breach of contract claim against Defendants, Plaintiff's only remaining legal theory is negligence. To make a proper showing of negligence, Plaintiff must show causation. Plaintiff, thus, must establish that the propane heater was indeed the cause of the fire. Here, Defendants do not argue that they are prejudiced in their ability to defend against each element of the claim (as might be the case in a strict product liability case

where the object that is the subject of litigation is missing).  Nevertheless, the alleged spoliation could prejudice Defendants by limiting their ability to defend against the causation element and present alterative theories of the fire.

More specifically, Defendants argue that the alteration of the scene on the morning of March 6, 2008, which included the demolition of a wall and the removal of the propane heater, prevented Adams's expert Michael Moyer from making an opinion as to the origin and cause of the fire.  Likewise, by the time an expert for Quintero arrived on the scene on April 1, 2008, the fire scene had been further contaminated.  In short, Defendants argue that, as a direct result of the contamination of the fire scene, no defense expert is able to refute the conclusions of Plaintiff's expert Schriver as to the cause of the fire.

The court finds that Defendants did incur some prejudice as a result of the alteration of the fire scene.  Indeed, it is commonly accepted that a defendant suffers some measure of prejudice if it is precluded from conducting its own independent investigation of a fire scene to determine alternate causes.  *See Mt. Olivet*, 781 A.2d at 1272 (citing *Pia*, 718 A.2d at 325; *Baliotis*, 870 F. Supp. at 1291; *Henkel Corp. v. Polyglass United States*, 194 F.R.D. 454, 457 (E.D.N.Y. 2000)).  However, this case presents several facts that serve to mitigate the amount of prejudice suffered by Defendants.  First, defense expert Moyer was able to view the scene on March 6, 2008, and he was also able to view the propane heater which, although it had been removed from the building, was still on-site in the back of Anthony's pickup truck.  Moyer, nevertheless, testified at his deposition that it was important for him to inspect the heater in the exact position where it was found because it would give him an idea where the heater was located at the time of the fire

16

and would also allow him to make observations of the heater in regards to the fire intensity and movement patterns toward the heater. (Doc. 43-10, Moyer Dep. p. 36.) This point is mitigated somewhat by Drees's report, which was provided to Defendants and which attached a detailed sketch of the location of the heater and several photographs of the fire scene during the delamination process. In *Baliotis*, the fire marshal took "a number" of photographs. 870 F. Supp. at 1287. Also available to defendants in that case was a lengthy video tape. *Id.* The court found that the existence of "scores" of photographs and a lengthy video tape mitigated the prejudice. *Id.* at 1291. Likewise, in *N.J. Manufacturers Ins. Co.*, another case involving spoliation of a fire scene, the court found that numerous photographs taken by fire officials "militate toward finding a lower degree of prejudice, but only slightly so." 2008 U.S. Dist. LEXIS 49911, at *33. In that case, the defendant had to rely on photographs of propane piping that were not preserved.[4]

The court is unable to determine the quality of the black-and-white photographs attached to Drees's report, (*see* Doc. 52-1), however it is undisputed that the Fire Marshal's report and the accompanying sketch and photographs were

---

[4] The case *sub judice* is distinguishable from cases where the alleged source of the fire was not preserved. *See N.J. Mfrs. Ins. Co.* 2008 U.S. Dist. LEXIS 49911; *Oxford Presbyterian Church v. Weil-McLain Co.*, 815 A.2d 1094 (Pa. Sup. Ct. 2003) (upholding trial court's jury instruction of an adverse inference regarding the destruction of physical evidence, finding that two-dimensional photographs were not as valuable as a three-dimensional examination of the fire scene). Here, defense expert Moyer was able to observe both the fire scene as well as the propane heater after it was placed in the back of Anthony's truck. Neither Plaintiff, nor any agent of Plaintiff, destroyed the propane heater. The court finds that this factual distinction further mitigates the degree of prejudice incurred by Defendants. *See Pia*, 718 A.2d at 325 (finding less prejudice where object that allegedly started the fire was not missing and appellee was able to examine the item and present a defense to the accusation of negligence).

provided to defense experts.[5]  In *Mt. Olivet Tabernacle Church*, the court held that "prejudice is less severe where an independent third party expert (such as a fire marshal) has investigated the scene, because in such a situation the defendant need not rely solely on the plaintiff's own investigation to determine the presence or absence of alternative causes." 781 A.2d at 1272.  Accordingly, the presence of Fire Marshal Drees during the investigation, and the availability of his report and the accompanying photographs, serve to reduce the amount of prejudice incurred by Defendants.

Moreover, although a party suffers some measure of prejudice if it is precluded from conducting its own investigation of the evidence to determine alternative causes, Pennsylvania courts have found that prejudice is less severe where potential alternative causes of the fire are speculative.  *Id.*  Here, Drees's report considered, and ultimately dismissed, other possible causes.  For example, Drees dismissed arson and electrical problems as possible causes, and concluded that "propane heater system heater consists of cylinder, regulator, and hose and heater unit.  Unit caution and operational labels make the system and placement of the system suspect along with area of origin and measurements of room it was placed

---

[5]  Although not apparent from the parties' motions or briefs, it appears Defendants were given other photographs beyond those attached to Drees's report.  For example, during the deposition of Defendants' expert Michael Moyer, he was given 108 pictures to review, which were previously in Plaintiff's position, and were produced to Defense counsel.  Moyer reviewed these photographs after he concluded his expert report, and one day before the deposition.  According to Moyer, these photographs show the fire scene with "no demolition or modification."  (Moyer Dep. p. 73.)  Moyer also admits that "these are the kind of photos that I would receive on occasion to assist me in making – they would help me.  They may not be what I need to make a conclusion, but they could assist me."  (*Id.* p. 75.)  The court cannot ascertain the helpfulness of these photographs to Defendants cause, but, at a minimum, finds that the production of these additional photographs of the untouched fire scene should serve to further mitigate the amount of prejudice incurred by Defendants.

in."[6] (Doc. 52-1, Fire Marshal Drees's Report.)  Likewise, neither Plaintiff's experts

Schriver (Doc. 43-15) nor Wald and Sofield (Docs. 52-1, Ex. G) revealed any

alternative causes.  Thus, the failure to preserve the fire scene as-is resulted in only a

speculative degree of prejudice.

In short, the court finds that although Defendants likely suffered some

prejudice in light of the removal of the propane heater from the fire scene, that

prejudice is partially mitigated by: (1) the photographs of the fire scene which were

produced to Defendants; (2) the preservation of evidence found in the area of origin,

in particular the propane heater; and (3) the absence of any likely alternatives as

reported by the Fire Marshal and Plaintiff's expert.  It is further noted that, although

Defendants may have been able to present a stronger defense had defense experts

been able to examine the propane heater on the spot, Defendants are nevertheless

able to present a defense to Plaintiff's claim by cross-examining Plaintiff's experts

---

[6] The caution and operational labels on the heater referred to in Drees's report state, in part, as follows:

6.  Locate containers at least 7 ft. from the heater and do not direct exhaust toward containers.

7.  Use only the hose and regulator assembly provided with the heater.  The hose assembly shall be protected from traffic, building materials and contact with hot surfaces both during use and while in storage.

8.  For indoor use only.  Areas must be well ventilated.  Provided minimum openings of 2 sq. ft. near the floor and 2 sq. ft. near the ceiling.

\*\*\*

11.  Maintain MINIMUM clearance from normal combustible materials as follows: sides-4 ft; top-6 ft.  Locate 10 ft. from canvas tarpaulins or similar coverings and secure them to prevent flapping or movement due to wind action.

(Doc. 45, Def.'s Joint Mot. for Sum. J., ¶ 19.)

and calling its own experts to render opinions based on plaintiff's evidence, or otherwise call into question Plaintiff's expert's opinions. *Baliotis*, 870 F. Supp. at 1291; *Mt. Olivet*, 781 A.2d at 1272. Accordingly, the court finds that Defendants suffered some, but relatively little, prejudice in light of the above considerations.

### 3. Sanctions

*Schmid* requires that the court weigh the fault and prejudice considerations when applying the appropriate sanction. There are three sanctions available to the court: (1) a jury instruction on the "spoliation inference"; (2) the exclusion of Plaintiff's expert report; and (3) the outright dismissal of the claim for which Defendant's position has been prejudiced. Defendants argue for the outright dismissal of Plaintiff's claim. The court, however, must "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *See Schmid*, 13 F.3d at 79. The court in *Schmid* found that where there is no bad faith on the part of the spoliating party and the prejudice is not severe, an entry of judgment is unwarranted. *Id*. at 81.

As explained above, the court has concluded that Plaintiff does bear some, but not overwhelming, responsibility for the removal of the propane heater, and that Defendants were prejudiced, but not to the extent of being precluded from presenting a viable defense. Moreover, there is no evidence of bad faith. Accordingly, the court finds that the facts of this case do not call for the most severe sanction of dismissal of Plaintiff's claims.[7] Nevertheless, Defendants case has been rendered somewhat more difficult by the inability to inspect the propane heater *in*

---

[7] The court retains the right to select a more severe sanction should the evidence at trial lead the court to conclude that the prejudice to Defendants is more severe than the record reveals at this juncture. *See Howell*, 168 F.R.D. at 508, n.5.

*situ* at the fire scene.  Accordingly, the court finds that the lesser sanction of a "spoliation inference," is warranted.  An adverse instruction is a common penalty for spoliation and is frequently employed by courts where commensurate levels of fault and prejudice are existent.  *See Baliotis*, 870 F. Supp. at 1292-93; *Howell*, 168 F.R.D. at 508; *Pia*, 718 A.2d at 325; *Mount Olivet*, 781 A.2d at 1273.  Under these circumstances, an appropriate instruction to the jury that he or she may infer, should he or she choose, that if Defendants were permitted to inspect the propane heater at the fire scene *in situ*, any additional evidence from the unaltered scene would have been unfavorable to Plaintiff.  In short, although Defendants' motions for summary judgment regarding spoliation (Docs. 43, 49, & 50) will be denied, Defendants will be entitled to a jury instruction at trial as to the spoliation inference.

### B.    Schriver's Report

Defendants jointly challenge the validity of Plaintiff's expert Bradley Schriver's report.  Specifically, Defendants argue that Schriver's conclusion that the propane heater caused the fire is nothing more than a baseless, conclusory statement, in violation of Federal Rule of Civil Procedure 26(a)(2)(B).  Defendants contend that this is not a matter calling for a *Daubert* hearing, because *Daubert* relates to the reliability of the proffered expert opinion, which in turn depends on the methodology used.  Defendants state that "the Schriver report does not contain any discussion of methods or techniques which might otherwise require examination for reliability and, therefore, a *Daubert* hearing is not warranted."  (Doc. 46 p. 10.) Defendants argue that summary judgment is appropriate on this ground because Plaintiff has not offered any other expert to address causation, a point disputed by

Plaintiffs.  *See supra* note 3.  For the reasons set forth below, the court will deny Defendants' joint motion.

Federal Rule of Civil Procedure 26(a)(2)(B) requires that a written report of a trial expert must contain, *inter alia*, "a complete statement of all opinions the witness will express *and the basis and reasons for them.*"  Fed. R. Civ. P. 26(a)(2)(B)(I) (emphasis added).  Thus, the court may refuse to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  A court may conclude there is simply too great an analytical gap between the data and the opinion proffered.  *Id.*

Having reviewed the expert report, the court does not find that Schriver made an analytical "giant leap" in forming his opinion.  *See Cherry v. City of Phila.*, 2002 U.S. Dist. LEXIS 3523, *7 n.5 (E.D. Pa. Feb. 28, 2002.)  For example, the report states that Schriver examined the scene with Drees; Detective Dennis Woodring of the Dauphin County District Attorney's Office; Trooper Carl Schmidhammer of the Pennsylvania State Police; Larry Wharton, Electrical Engineer for CAUA; and Bernard Anthony, a heavy equipment operator.  (Doc. 43-15, p. 1.)  In drawing his conclusion, Schriver also states that he reviewed the reports of Michael Wald, Raymond Sofield, and Larry Wharton.  (*Id.* at p. 2.)  The report states he conversed with Drees in the process and also personally participated in a search of a missing valve from the propane cylinder with other investigators.  (*Id.*)  The report further notes that the Wald/Sofield and Wharton reports "were able to successfully conclude that the fire was not the result of an electrical failure" and further that "all additional scenarios were considered and ultimately excluded as the

ignition source for this fire." (*Id.* at p. 2-3.) In light of these considerations, the court finds that Schriver had a sufficient factual basis to form his opinion.

Although Defendants' argument for preclusion of Plaintiff's report appears to be limited to Schriver's allegedly baseless conclusion, the court also feels compelled to address Defendants' argument that a *Daubert* hearing is not necessary because "the Schriver report does not contain any discussion of methods or techniques which might require an examination for reliability . . . ." (Doc. 46 p. 10.) Although not explicitly stated in the report, it appears that Schriver's report comports with National Fire Protection Association Guide 921 ("NFPA 921"). In *Hoang v. Funai Corp.*, 652 F. Supp. 2d 564 (M.D. Pa. 2009) (Kane, C.J.), the court examined an expert report submitted by Bradley Schriver, the same expert at issue here. The court noted that although there was no reference to methodology in the report, Schriver testified that his investigation was guided by NFPA 921 guidelines. There, like here, Schriver examined the fire scene, examined potential sources of the fire, considered and ultimately rejected alternative sources and interviewed fire investigators. The court concluded that, based on the description of steps taken during the investigation, Schriver was following NFPA 921 standards.[8] *Id.* at 570. Here, too, Schriver examined the scene, reviewed reports, and interviewed individuals with knowledge. In so far as Defendants' argument amounts to a tacit objection based on Federal Rule of Evidence 702, the court notes that "the NFPA 921 methodology is widely considered to be reliable for purposes of 702." *Hoang*,

---

[8] NFPA 921 states that an origin and cause investigation is conducted "by an examination of the scene and by a combination of other data collection methods, such as the review of previously conducted investigations of the incident, the interviewing of witnesses or other knowledgeable persons, and the results of scientific testing." (Doc. 55 at p. 4) (citing NFPA 921.)

652 F. Supp. 2d at 570. Further, NFPA 921 endorses the process of elimination, which Schriver used here, as an acceptable methodology in determining the cause of a fire. *Id.* at 574. The court lastly notes that Defendants have not noticed Schriver for a deposition or informed Plaintiff of their intention of doing so. (*See* Doc. 55, p. 5.) Thus, Defendants have not exercised their ability to question Schriver about his methodology. In light of the foregoing, the court declines to preclude Schriver's report and Defendants' joint motion will therefore be denied.

**IV.** **Conclusion**

In short, the court will deny Defendants' motions for summary judgment for spoliation of evidence. (Docs. 43, 49, & 50.) The court will, however, permit a jury instruction at trial as to the spoliation inference in light of Plaintiff's low degree of fault in contaminating the fire scene and the low degree of prejudice suffered by Defendants as a result. The court will also deny Defendants' joint motion for summary judgment to preclude Plaintiff's expert Bradley Schriver's report (Doc. 45) because the court finds that Schriver had a sufficient factual basis to form his opinion, and that basis was clearly set forth in his report.

s/Sylvia H. Rambo
United States District Judge

Dated: March 5, 2013.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**COMMUNITY ASSOCIATION
UNDERWRITERS OF AMERICA,
INC. A/S/O PARK VIEW AT
WAVERLY, A CONDOMINIUM
C/O PMI MANAGEMENT,**

        **Plaintiff**

        **v.**

**RHODES DEVELOPMENT GROUP,
INC. A/K/A RHODES
DEVELOPMENT CORP. A/KA/ R&L
CONSTRUCTION COMPANY,
ADAMS DRYWALL, and PEDRO
YAHUITL QUINTERO,**

        **Defendants**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**CIVIL NO. 1:09-CV-0257**

**Judge Sylvia H. Rambo**

## O R D E R

In accordance with the accompanying memorandum of law, it is hereby ordered that Defendants' motions for summary judgment (Docs. 43, 45, 49, & 50) are **DENIED**. The court will issue a separate order setting forth the remaining case management deadlines for the balance of the case, including a trial date.

                        s/Sylvia H. Rambo
                        United States District Judge

Dated: March 5, 2013.